## MOBILE AND OHIO RAILROAD COMPANY *v.* TENNESSEE.

### ERROR TO THE SUPREME COURT OF THE STATE OF TENNESSEE.

No. 1004. Argued April 24, 1894. — Decided May 14, 1894.

This court has jurisdiction to revise the judgment of the Supreme Court of Tennessee in this case, deciding that the provision in the eleventh section of the Tennessee charter of the Mobile and Ohio Railroad Company that no tax shall ever be laid on said road or its fixtures which shall reduce the dividends below eight per cent does not forbid the assessment and collection of taxes under the acts of the legislature of Tennessee referred to in the opinion of that court; that "the said eight per cent clause is invalid," "null and void," and that the said legislation " does not violate or impair the obligation of any contract with the Mobile and Ohio Company."

In 1848 the legislature of Tennessee had, under the constitution of the State of 1834, then in force, power to grant to the Mobile and Ohio Railroad Company the exemption from taxation which was granted to it by the eleventh section of the act of January 28, 1848, incorporating it in Tennessee, in the following terms: "That the capital stock of said company shall be forever exempt from taxation, and the road, with all its fixtures

and appurtenances, including workshops, warehouses, and vehicles of transportation, shall be exempt from taxation for the period of twenty-five years from the completion of the road, and no tax shall ever be laid on said road or its fixtures which will reduce the dividends below eight per cent."

Under the provisions of that section the capital stock of the company is forever exempt from taxation during the existence of the corporation; the road, fixtures, etc., were exempt for twenty-five years after the completion of the road, which term has now expired; and now they can be taxed only when the net earnings of the road are more than sufficient to pay to the stockholders, on the present basis of its capital, a dividend of eight per cent a year.

Dividends can rightfully be paid only out of profits; profits are measured by the amount of net earnings; and net earnings are what remain after maintaining the property and paying the interest upon its debts.

In sustaining the validity of the exemption, the court must not be understood as holding that the railroad company has the right, in its discretion, to issue hereafter additional capital stock, or to increase its bonded indebtedness, even for legitimate purposes, and have the same taken into consideration upon the question of its liability for taxation under the eight per cent dividend clause of its charter.

THE case is stated in the opinion.

*Mr. E. J. Phelps* and *Mr. F. W. Whitridge,* (with whom was *Mr. E. L. Russell* on the brief,) for plaintiff in error.

*Mr. G. W. Pickle,* Attorney General of Tennessee, *Mr. M. M. Neil,* and *Mr. J. M. Troutt* for defendants in error. *Mr. F. W. Moore, Mr. John E. Wells, Mr. S. A. Champion, Mr. J. R. Deason, Mr. E. L. Bullock, Mr. A. W. Stovall,* and *Mr. James M. Head* were with them on their briefs.

MR. JUSTICE JACKSON delivered the opinion of the court.

The Federal question presented by the writ of error in this case is whether state statutes, subjecting the property of a railroad corporation to taxation, impair the obligation of the contract contained in an exemption clause of the company's charter?

It arises in this way: The State of Tennessee and certain counties therein in February, 1891, filed their bill against the

Mobile and Ohio Railroad Company, (hereafter styled the railroad company,) and its mortgagee, the Farmers' Loan and Trust Company, to enforce the collection of state and county taxes, assessed upon the property, roadbed, and fixtures of the railroad company for the years 1885 to 1889 inclusive. The defence specially interposed, and which raises the Federal question in the case, was that the revenue statutes of the State, enacted subsequent to the granting of the charter, and under which the taxes sought to be collected were levied, impaired the obligation of the contract contained in the railroad company's charter, and were therefore unconstitutional and void.

The railroad company was chartered by an act of the legislature of the State of Tennessee, approved January 28, 1848. The State in granting the charter reserved no right to amend or repeal the same ; nor was there any provision either in the constitution or the general laws of the State — in existence at the time — which reserved to the State the right to alter, modify, or repeal the charter. By section 11 of the act of incorporation it was provided : " That the capital stock of said company shall be forever exempt from taxation, and the road, with all its fixtures and appurtenances, including workshops, warehouses, and vehicles of transportation, shall be exempt from taxation for the period of twenty-five years from the completion of the road, and no tax shall ever be laid on said road or its fixtures which will reduce the dividends below eight per cent."

Various grounds were alleged in the bill on which the effect of section 11 was sought to be avoided, or to show that the railroad company had waived or forfeited the benefits of the exemption contained in the last clause thereof. These allegations need not, however, be noticed, as they were found and adjudged by the Supreme Court of Tennessee against the complainants, and in favor of the railroad company. The pleadings admitted and the proofs established that since the completion of the road to its original northern terminus on the Mississippi River, in April, 1861, the railroad company had neither earned nor declared any dividend, either on its whole

line or upon any portion of its road lying in the State of Tennessee.  It is also shown that its earnings for the years 1885 to 1889, inclusive, were insufficient to pay any dividend to its stockholders.

The period of twenty-five years from the completion of the road, referred to in the section, having expired on April 22, 1886, the Supreme Court of the State disallowed the taxes assessed and claimed for the years 1885 and 1886, on the ground that they were covered by the twenty-five year exemption, but adjudged and decreed that the railroad company was liable to the respective complainants for the taxes of 1887, 1888, and 1889, in the following amounts: to the State of Tennessee, $24,117.73; to McNairy County, $16,365.52; to Madison County, $13,769.69; to Chester County, $4210.25; to Obion County, $10,554.61; to Gibson County, $19,182.06; which sums were declared liens upon the property of the railroad company.

The grounds upon which its decree was based, and which are assigned for error, are as follows:

"And the court, construing said 11th section of said Tennessee charter, is further of opinion, and doth so adjudge and decree, that the true intent and meaning of the said 11th section of the Tennessee charter of the Mobile and Ohio Railroad Company, passed January 28th, 1848, is that on and after the 22d day of April, 1886, being twenty-five years from the completion of said road, the road, with all its fixtures and appurtenances, including workshops, warehouses, and vehicles of transportation, all the property, franchise, etc., of the said Mobile and Ohio Railroad Company, became liable to taxation; and the court is further of opinion, and doth accordingly so adjudge and decree, that from and after said 22d day of April, 1886, all of said properties of every description of the said Mobile and Ohio Railroad Company — that is to say, its roadbed and fixtures and appurtenances, including workshops, warehouses, vehicles of transportation, and all of its property of every kind and description and franchises, become liable to taxation under the rule of equality and uniformity prescribed in article 2, section 28, of the constitution of 1834 of the

State of Tennessee; and it further appearing to the court that the complainants have in their bill in this cause attacked the eight per cent clause in the said section (11) eleven of the said charter of the said Mobile and Ohio Railroad Company, passed by the legislature of Tennessee on January 28th, 1848, which eight per cent clause reads as follows: 'And no tax shall ever be laid on said road or its fixtures which will reduce the dividends below eight per cent,' and that they have charged in their said bill, among other things, that said eight per cent clause is in violation of the rule of equality and uniformity of taxation prescribed by said article 2, section 28, of said constitution of 1834, and the court being of opinion that said property became taxable as aforesaid on and after April 22, 1886, therefore the court doth adjudge and decree that the said eight per cent clause is in violation of said article 2, section 28, of said constitution of 1834, as aforesaid, and that the same is unconstitutional and void, which said article 2, section 28, of the said constitution of 1834 provides, among other things, 'that all property shall be taxed according to its value, that value to be ascertained in such manner as the legislature shall direct, so that the same shall be equal and uniform throughout the State. No one species of property from which a tax may be collected shall be taxed higher than any other species of property of equal value;' and the court is also of opinion, and doth accordingly so adjudge and decree, that said eight per cent clause is likewise void because it is so vague, indefinite, and uncertain in its terms as to be non-enforceable in this, to wit, that it does not appear from said clause or anywhere in said charter upon what dividends were expected to be declared, there being no amount or limit of capital stock fixed in said charter, and no means for fixing the same being provided, and no directions being given or means provided as to how said dividends should be ascertained, with a view to taxation or otherwise, and the court is of opinion, and doth accordingly so adjudge and decree, that said eight per cent clause is arbitrary, insensate, and absurd, and is void and unenforceable, and furnishes no obstacle whatever to the taxation of said properties.

" It is therefore adjudged and decreed by the court that the road of the said the Mobile and Ohio Railroad Company, together with all its fixtures and appurtenances, including workshops, warehouses, and vehicles of transportation, and all its properties and franchises, are subject and liable to taxation for state and county purposes in said counties of Obion, Gibson, Madison, Chester, and McNairy, (counties in said State of Tennessee,) and have so been liable since the 22d day of April, 1886, according to and by the several general statutes of assessment and taxation in force in the State of Tennessee during the years 1887, 1888, and 1889, and forever thereafter, under the equal and uniform laws of the State of Tennessee; and it is further adjudged and decreed by the court that the acts of the general assembly of the State of Tennessee, as set forth in the pleadings, to wit, the acts of 1875, chapter 78, page 103 ; acts 1877, ch. 19, p. 31; acts 1881, chapter 104, p. 133 ; acts of 1882, (extra session,) chapter 16, all of which are set out in Milliken and Vertrees' compilation of the acts of the legislature of Tennessee, and known as ' Milliken and Vertrees' Code of Tennessee,' chapter 5, pages 140, 141, 142, 143, 144, 145, being section 669 to section 708, inclusive, and the general revenue laws of the State covering the years 1887 to 1889, inclusive, being acts of 1885, chap. 1, p. 1, and acts of 1887, chaps. 1 and 2, and acts of 1889, chaps. 96 and 130, under and by which statutes the complainants have caused to be assessed for taxes the property of the defendant, the Mobile and Ohio Railroad Company, and are seeking to collect and force the payment of the taxes so assessed, are not in violation of section 10, article 1, of the Constitution of the United States of America, which provides, among other things, ' that no State shall pass any bill of attainder, *ex post facto* law, or law impairing the obligation of contracts, or grant any title of nobility,' but that said acts are valid and constitutional, and said properties of said the Mobile and Ohio Railroad Company are under said acts liable for taxes from and including the year 1887, and that the provision of the eleventh section of the Tennessee charter of the Mobile and Ohio Railroad Company, which provides that 'no tax shall ever be laid on said road or its fixtures which

shall reduce the dividends below eight per cent,' does not prevent the assessment and collection of said taxes under said statutes enacted for assessing, collecting, and enforcing payment of taxes on said railroad property, for that the court is of opinion and doth adjudge and decree that said eight per cent clause just quoted above is invalid, and that the provision set forth therein that ' no tax shall ever be laid on said road or its fixtures which will reduce the dividends below eight per cent' is null and void and doth not, therefore, interfere with or prevent the assessment and collection of taxes against said road under the said several revenue acts of the State of Tennessee, and that said several revenue acts are valid and constitutional and not in violation of said article I, section 10, of the Constitution of the United States of America, for that the same as applied to the taxes of 1887, 1888, and 1889, and future taxes, do not violate or impair the obligation of any contract with the Mobile and Ohio Company, the said eight per cent clause being null and void, all of which is accordingly so adjudged and decreed by the court."

It is contended by counsel for defendants in error that this court is without jurisdiction to review the judgment of the Supreme Court of Tennessee, because it was based, or proceeded, upon the ground that there was no contract in existence between the railroad company and the State to be impaired, and that the supposed contract was in violation of the state constitution of 1834, and hence not within the power of the legislature to make. In support of this proposition there are cited *Railroad Company* v. *McClure,* 10 Wall. 511, 515; *Boyd* v. *Alabama,* 94 U. S. 645; *Yazoo and Miss. Valley Railroad* v. *Thomas,* 132 U. S. 174; and *New Orleans* v. *New Orleans Water Works Co.,* 142 U. S. 79.

These decisions need not be specially reviewed, for they clearly do not apply to the case under consideration. It is well settled that the decision of a state court holding that, as a matter of construction, a particular charter or a charter provision does not constitute a contract, is not binding on this court. The question of the existence or non-existence of a contract in cases like the present is one which this court will

determine for itself, the established rule being that where the judgment of the highest court of a State, by its terms or necessary operation, gives effect to some provisions of the state law which is claimed by the unsuccessful party to impair the contract set out and relied on, this court has jurisdiction to determine the question whether such a contract exists as claimed, and whether the state law complained of impairs its obligation. A brief reference to some of the authorities is sufficient to show this:

In *Jefferson Bank* v. *Skelly*, 1 Black, 436, 443, it was said by this court: "Its (the Supreme Court) rule of interpretation. has invariably been that the constructions given by the courts of the States to state legislation and to state constitutions have been conclusive upon this court *with a single exception*, and that is when it has been called upon to interpret the contracts of States, 'though they had been made in the forms of law,' or by the instrumentality of a State's authorized functionaries, in conformity with state legislation. It has never been denied, nor is it now, that the Supreme Court of the United States has an appellate power to revise the judgment of the Supreme Court of a State whenever such a court shall adjudge that not to be a contract which has been alleged, in the forms of legal proceedings, by a litigant, to be one within the meaning of that clause of the Constitution of the United States which inhibits the States from passing laws impairing the obligation of contracts. Of what use would the appellate power be to a litigant who feels himself aggrieved by some particular state legislation, if this court could not decide independently of all adjudication by the Supreme Court of a State whether or not the phraseology of an instrument in controversy was expressive of a contract and within the protection of the Constitution of the United States, and that its obligation should be enforced notwithstanding a contrary conclusion by a Supreme Court of a State?"

In *New Orleans Water Co.* v. *Louisiana Sugar Co.*, 125 U. S. 18, 38, it was said by Mr. Justice Gray, speaking for the court: (1) "When the state court decides against a right claimed under a contract, and there was no law subsequent

to the contract, this court clearly has no jurisdiction." (2) " When the existence and construction of a contract are undisputed, and the state court upholds a subsequent law on the ground that it did not impair the obligation of the admitted contract, it is equally clear that this court has jurisdiction." (3) " When the state court holds that there was a contract conferring certain rights, and that a subsequent law did not impair those rights, this court has jurisdiction to consider the true construction of the supposed contract, and, if it is of opinion that it did not confer the right affirmed by the state court, and therefore its obligation was not impaired by the subsequent law, may, on that ground, affirm the judgment." (4) " So, when the state court upholds the subsequent law on the ground that the contract did not confer the right claimed, this court may inquire whether the supposed contract did give the right, because, if it did, the subsequent law cannot be upheld."

In *Wilmington & Weldon Railroad* v. *Alsbrook*, 146 U. S. 279, 293, it was said : " The jurisdiction of this court is questioned upon the ground that the decision of the Supreme Court of North Carolina conceded the validity of the contract of exemption contained in the act of 1834, but denied that particular property was embraced by its terms; and that, therefore, such decision did not involve a Federal question. In arriving at its conclusion, however, the state court gave effect to the revenue law of 1891, and held that the contract did not confer the right of exemption from its operation. If it did, its obligation was impaired by the subsequent law, and as the inquiry whether it did or not was necessarily directly passed upon, we are of opinion that the writ of error was properly allowed."

Also, in *Huntington* v. *Attrill*, 146 U. S. 657, 684, the court said : " The case in this regard is analogous to one arising under the clause of the Constitution which forbids a State to pass any law impairing the obligations of contracts, in which, if the highest court of the State decide nothing but the original construction and obligation of a contract, this court has no jurisdiction to review the decision; but if the

state court gives effect to a subsequent law which is impugned as impairing the obligations of a contract, this court has power, in order to determine whether any contract has been impaired, to decide for itself what the true construction of the contract is."

The same general proposition is clearly laid down in the following cases: *East Hartford* v. *Hartford Bridge Co.*, 10 How. 511, 531; *Ohio Life Ins. and Trust Co.* v. *Debolt*, 16 How. 416, 431; *Bridge Proprietors* v. *Hoboken Co.*, 1 Wall. 116, 144; *Delmas* v. *Ins. Co.*, 14 Wall. 661; *University* v. *People*, 99 U. S. 309, 321; *Louisville and Nashville Railroad* v. *Palmes*, 109 U. S. 244, 256; *Louisville Gas Co.* v. *Citizens' Gas Co.*, 115 U. S. 683, 697; *Vicksburg &c. Railroad* v. *Dennis*, 116 U. S. 665; *Yazoo &c. Railroad* v. *Thomas*, 132 U. S. 174; and in *Bryan* v. *Board of Education*, 151 U. S. 639, 650, it is said: " So that it is necessary to inquire as to the existence and effect of the alleged contract. And that question must be determined by this court upon its own judgment independently of any adjudication by the state court."

The rule announced in these decisions leaves no room to doubt the jurisdiction of this court in the present case. Aside from the certificate of the acting chief justice of the state Supreme Court that the constitutionality of the statutes, under which the taxes sought to be enforced were levied, was drawn in question by the plaintiffs in error, and was decided by that court in favor of the validity and constitutionality of such acts, the pleadings in the case, as well as the decree complained of, establish beyond doubt that the question presented was one clearly Federal in its character, such as this court has a right to review. The grounds upon which the Supreme Court of the State held that the contract, claimed by the railroad company under the eleventh section of its charter, was invalid, in no way affects the jurisdiction of this court. The legal existence of the contract itself, and its proper construction, is necessarily involved in the question of the alleged impairment of the obligation thereof.

It appears from the decree of the Supreme Court of the

State that the exemption clause relied on by the plaintiffs in error was held to be invalid on two grounds: First, that it was in conflict with section 28, article 2, of the state constitution of 1834; and, second, it was invalid and unenforceable for vagueness and uncertainty, because it did not appear from the clause, or otherwise in the charter, upon what the dividends were to be declared, inasmuch as there was no amount or limit of capital stock fixed in the charter, and no means provided for either fixing the same or for ascertaining the dividends thereon.

This last ground on which the court rested its judgment is manifestly unsound, for the clause in question, that "no tax shall ever be laid on said road or its fixtures which will reduce the dividends below eight per cent," is clearly not so incapable of any reasonable construction as to be void. On the contrary, its terms are plain and unambiguous. The only matter involving construction or interpretation is the meaning to be attached to the term "dividend." It admits of no question that the word "dividend" mentioned therein has reference to dividends on the capital stock of the company held and owned by its shareholders. The term "dividend" in its technical as well as in its ordinary acceptation means that portion of its profits which the corporation, by its directory, sets apart for ratable division among its shareholders. *Lockhart* v. *Van Alstyne*, 31 Michigan, 76; Boone on Corporations, sec. 125.

In the present case it appears that the maximum capital stock authorized by the charter was $10,000,000, and that the stock actually issued by the company, at various times during the construction of the road, and outstanding, amounted to the sum of $5,320,600, which, together with the company's bonded indebtedness, fairly represented the cost of building and completing the road. The amount of stock being fixed, it was a matter of mere calculation as to when the profits from net earnings would be sufficient to meet the designated dividend.

Again, dividends can be rightfully paid only out of profits. Corporations are liable to be enjoined by shareholders or cred-

itors from making a distribution, in dividends, of capital. Taylor on Corporations, section 565, and authorities cited.

The term "profits," out of which dividends alone can properly be declared, denotes what remains after defraying every expense, including loans falling due, as well as the interest on such loans. *Correy* v. *Londonderry Railway Co.,* 29 Beav. 263.

The net earnings of corporations out of which profits are distributable in dividends are thus defined in *St. John* v. *Erie Railway Co.,* 10 Blatchford, 279 : "Net earnings are properly the gross receipts less the expenses of operating the road to earn such receipts. Interest on debts is paid out of what thus remains — that is, out of the net earnings. Many other liabilities are paid out of the net earnings. When all liabilities are paid, either out of the gross receipts or out of the net earnings, the remainder is the profit of the shareholders, to go toward dividends, which, in that way, are paid out of the net earnings." This case was affirmed by this court, 22 Wall. 136.

In *New York, Lake Erie & Western Railroad* v. *Nickals,* 119 U. S. 296, 308, the same general rule that shareholders are entitled only to dividends out of the net earnings derived from the operations of the company is reaffirmed.

It must be assumed that the legislature of Tennessee used the term "dividends," in the exemption clause under consideration, in the general sense indicated, and had reference to that portion of the net earnings of the company which legitimately constituted profits and could be rightfully apportioned or distributed among shareholders. There is no difficulty in ascertaining the amount of such profits in any year, and the stock actually issued being fixed, it is hard to understand how it could be held that the exemption clause was void and unenforceable for want of certainty. The law regards that as certain which is capable of being ascertained and definitely fixed. The State cannot complain that no method has been provided for ascertaining the amount of profits applicable to the payment of the designated dividends. That is a matter purely of administration, which does not touch in any way the validity of the contract embodied in the exemption clause.

It is stated on behalf of the defendants in error that the company earned for the years in question profits more than sufficient to pay eight per cent dividends, if the interest on its bonded indebtedness was not chargeable against the earnings. This point was not passed upon by the court below, and, if the fact be as stated, it could not avail the defendants in error, for the payment of the annually accruing interest on the bonded debt of the railroad company was a proper charge against the net earnings, to be paid before dividends could be declared thereon. Mr. Justice Bradley, in *Union Pacific Railroad* v. *United States*, 99 U. S. 402, 422, declared that interest on the bonded indebtedness of the company, like other current expenses, was payable out of the net earnings before dividends could be distributed to the stockholders.

In *Belfast & Moosehead Lake Railway* v. *Belfast*, 77 Maine, 445, it was directly adjudged that the interest on the bonded debt is payable out of the net earnings before dividends can properly be declared.

In *Correy* v. *Londonderry & Enniskillen Railway*, 29 Beav. 263, 272, 274, Sir John Romilly, Master of the Rolls, in discussing this subject, while admitting that the funded indebtedness of a corporation was not properly payable out of profits before there could be a division thereof, held that any and all debts which had been incurred, and which were due from the company and ought to have been paid, and would have been paid at the time had the corporation possessed the necessary funds for that purpose, constituted proper deductions from the earnings before the profits properly distributable could be ascertained.

The further claim is made in the brief, although not insisted upon in argument, that if the earnings of the company were insufficient upon which to declare a dividend, the exemption clause had no operation, because there would be no reduction of dividends. In other words, that the property of the company was taxable during all the years that it could not declare any dividend. This suggestion is wanting in plausibility and needs no further consideration, for if the exemption clause has any meaning, purpose, or validity what-

ever this theory would utterly destroy it, as the company would be taxable when it made no profits, and get the benefit of the exemption only when profits to a certain amount were realized.

We come next to the consideration of the other ground on which the Supreme Court based its decree. In reaching its conclusion that the eight per cent dividend clause of the company's charter violated that portion of section 28, article 2, of the state constitution of 1834, which provides: "All property shall be taxed according to its value, that value to be ascertained in such manner as the legislature shall direct, so that the same shall be equal and uniform throughout the State. No one species of property from which a tax may be collected shall be taxed higher than any other species of property of equal value," the Supreme Court of Tennessee gave no effect to that clause of the charter as an exemption, either fixed, conditional, or contingent, but proceeded upon the theory that the property of the railroad company became absolutely liable to taxation on and after April 22, 1886, at the expiration of the twenty-five years from the completion of the road, without regard to the state of the company's earnings, or its capacity to pay dividends in any amount. The construction thus placed upon section 11 of the charter practically assumed the main question of controversy involved in the case.

It is conceded by counsel for defendants in error, as is well settled by the decisions of the Supreme Court of Tennessee and of this court, that the legislature of Tennessee had the power and authority under the state constitution of 1834, to grant to corporations, created by it, exemption from taxation; that such exemption might confer either total or partial immunity from taxation, and extend for any length of time the legislature might deem proper. Amongst the authorities establishing this general proposition are the following: *Knoxville &c. Railroad* v. *Hicks,* 9 Baxter, 445 ; *State* v. *Butler,* 13 Lea, 400 ; *S. C.* 2 Pickle, (86 Tenn.,) 614 ; *University of the South* v. *Skidmore,* 3 Pickle, (87 Tenn.,) 156 ; *Memphis* v. *Bank and Ins. Co.,* 7 Pickle, (91 Tenn.,) 546 ; *Memphis* v. *Memphis*

*City Bank,* 7 Pickle, (91 Tenn.,) 577; *Farrington* v. *Tennessee,* 95 U. S. 679; *County of Tipton* v. *Locomotive Works,* 103 U. S. 523; *Bank* v. *Tennessee,* 104 U. S. 493.

It is also established by the decisions of Tennessee, as counsel for defendants in error properly admit, that there was no imperative constitutional requirement upon the legislature to tax all property. The first paragraph of section 28, article 2, of the constitution of 1834 provided that "all lands liable to taxation, held by deed, grant, or entry, town lots, bank stock, slaves between the ages of twelve and fifty years, and such other property as the legislature may from time to time deem expedient, shall be taxable." This provision, as held in *Railroad* v. *Hicks,* 9 Baxter, 448, 449, did not make it the duty of the legislature to tax all property, but left it discretionary with that body to tax, or to omit to tax, that is to exempt, as it might deem expedient. This provision meant only that when a tax was imposed it must be upon the value of the property, ascertained by some uniform rule.

It being settled that there was no requirement of the constitution that all property should be taxed, and that the legislature of Tennessee, under the constitution of 1834, had the power to grant exemption from taxation in charters of incorporations, and that such charters, after acceptance, became binding and irrevocable contracts, the real controversy in the present case, while extremely important in its consequences to both the State and the railroad company, lies within a very narrow compass, and turns upon the proper construction of the last clause of section 11 of the charter, which provides that "no tax shall ever be laid on said road or its fixtures which will reduce the dividends below eight per cent."

Does this clause constitute an immunity, fixed, special, conditional, or contingent, from taxation?

It is undoubtedly a part of the contract of exemption from taxation contained in the eleventh section of the charter, and as such the corporation is entitled to the benefit thereof. The meaning and intent of the provision was clearly a stipulation on the part of the legislature to forego the exertion of its taxing power to the extent of allowing the corporation to

pay its shareholders eight per cent dividends from the net earnings of the company. The manifest object of the clause was to invite and encourage the investment of private capital in the enterprise of building the road. By the previous clauses of the section the capital stock was exempt from taxation forever, and the road, with all its fixtures and franchises, was exempt for the period of twenty-five years from its completion. These exemptions were primarily for the benefit of the corporation. The shares of stock were subject to taxation against the owners or holders thereof, and this last clause was clearly intended for their benefit to the extent of securing, as far as an immunity from taxation would do so, any reduction of dividends on their stock below eight per cent per annum.

The constitutional power to grant exemption, wholly or partially, and for fixed or indefinite periods, necessarily includes the power to exempt upon conditions or contingencies which are to happen in the future. To hold that an exemption is good for a term of years, and is not good if made to depend upon a plain contingency by which it may take effect in some years and not in others, is, as counsel for the plaintiffs in error justly insist, a distinction neither sound in principle nor supported by authority.

The intent and purpose of the clause in question are clear, not only from its language, but from the history and circumstances preceding and surrounding the grant of the charter. The state constitution of 1834 declared that a well regulated system of internal improvement should be encouraged. The incorporating act recited that "it is deemed a matter of vital importance to this State that a direct communication by railroad to the Gulf of Mexico be established." The State was practically without railroad facilities and needed a line of transportation extending through the interior of its western division, and connecting it with the Gulf of Mexico on the south and the Mississippi River and its tributaries on the north. Its special interest in the road in question was manifested by the third section of the charter, which "required the company to open books for the subscription of shares in the capital stock of the company in the State of Tennessee,

so as to afford citizens of the State an opportunity to take stock to the amount of one-fourth of the capital of the company;" and to induce its own citizens, as well as outside capitalists, to invest and risk their money in the enterprise, more or less hazardous, was the manifest object of the exemption contained in section 11 of the railroad company's charter, the latter clause of which was especially designed to secure or to give an assurance of a reasonable return to the parties taking the stock of the company by postponing the taxing power of the State to the payment of the designated dividends.

In *Preston* v. *Browder*, 1 Wheat. 115, 120, it was said that in the construction of the statutory laws of a State it is frequently necessary to recur to the history and situation of the country in order to ascertain the reason, as well as the meaning, of many of the provisions in them. The same general rule is stated in *United States* v. *Union Pacific Railroad*, 91 U. S. 72, 80, 81, and in *Platt* v. *Union Pacific Railroad*, 99 U. S. 48, 64, where it was applied in construing certain sections of the act of Congress, approved July 1, 1862, incorporating and granting lands to the Union Pacific Railroad Company. So in *Winona & St. Peter Railroad* v. *Barney*, 113 U. S. 618.

Legislative contracts, especially, should be read in the light of the public policy entertained, and the purposes sought to be accomplished at the time they were made, rather than at a later period when different ideas and theories may prevail. In *Platt* v. *Union Pacific Railroad*, Mr. Justice Strong expresses this proposition as follows: "There is always a tendency to construe statutes in the light in which they appear when the construction is given. It is easy to be wise after we see the results of experience. . . . But in endeavoring to ascertain what the Congress of 1862 intended, we must, as far as possible, place ourselves in the light that Congress enjoyed; look at things as they appeared to it, and discover its purpose from the language used in connection with the attending circumstances."

In the present case we are clearly of opinion, both from the surrounding circumstances and the language of the charter

contract, that an exemption from taxation was intended to be granted by the clause under consideration, to the extent and for the purposes stated.

Counsel for the State contend that this clause, although it fixes no valuation or rate of taxation, is yet a special and discriminating rule for the taxation of the company's property, and it is sought by this designation to escape the legal effect and operation of the provision ; but the difficulty in the way of this contention is that the power of exemption would embrace a charter contract which made a special and discriminating rate of taxation. The State, under the power of absolute exemption, could include in a charter contract a provision that the property of the corporation should be only liable for one-half the current rate of taxation levied by the State during any year, or it could constitutionally provide by the charter that the corporate property should be assessed at only one-half of its value. The legislative power to make such terms, especially in charters of corporations, cannot be doubted. They would be clearly included in the general power to grant absolute exemptions.

Again, the distinction sought to be made between an exemption or immunity, and a special and discriminating rule of taxation, as applied to charters, is wholly unsupported by the authorities. On the contrary, the decisions of the Supreme Court of Tennessee and of this court have ignored any such distinction, and have uniformly given effect to charter provisions which made special and discriminating rates of taxation.

Thus, in *Raleigh & Gaston Railroad* v. *Reid,* 13 Wall. 269, the property of the company was exempted for a term of years, after the expiration of which the legislature was at liberty to tax individual shares of the stockholders whenever their annual profit exceeded eight per cent, provided that the tax did not exceed twenty-five cents per share per annum. The pleadings in the case showed that the annual profits on the shares never reached eight per cent, and it was held that they were not subject to any tax.

In *Farrington* v. *Tennessee,* 95 U. S. 679, 681, the charter of the company contained this provision : " That the said

company shall pay to the State an annual tax of one-half of one per cent on each share of the capital stock subscribed, which shall be in lieu of all other taxes."

In *Knoxville &c. Railroad* v. *Hicks*, 9 Baxter, 442, 445, the charter granted in 1856 contained the following exemption: "Sec. 33. Be it enacted, that the capital stock of the said company, the dividends thereon, and the road and fixtures, depots, workshops, warehouses, and vehicles of transportation belonging to the said company, shall be forever exempt from taxation; and it shall not be lawful for the State or any corporate or municipal police or other authority thereof, or of any town, city, or district thereof, to impose any tax upon such stock or dividends, property or estate: Provided, the stock or dividends, when the said dividends shall exceed the legal interest of the State, shall be subject to taxation by the State in common with and at the same rate as money and interest, but no tax shall be imposed so as to reduce the part of the dividends to be received by the stockholders below the legal interest of the State."

In *State* v. *Butler*, 13 Lea, (Tenn.,) 400, the provision was that "the said company shall pay an annual tax of one-half of one per cent on each share of capital stock subscribed, which shall be in lieu of all other taxes." In *State* v. *Butler*, 2 Pickle, (Tenn.,) 614, 617, there was the same exemption as in the former case.

So in *Memphis* v. *Bank and Ins. Cos.*, 7 Pickle, 546, 548, the exemption clause was "that said company should pay to the State an annual tax of one-half of one per cent on each share of stock subscribed, which shall be in lieu of all other taxes;" and in *Memphis* v. *Memphis City Bank*, 7 Pickle, 574, 577, decided in 1892, the exemption in the charter was as follows: "Be it further enacted, there shall be levied a state tax of one-half of one per cent upon the amount of the capital stock actually paid in, to be collected in the same way and at the same time as other taxes are by law collected, and which shall be in lieu of all other taxes and assessments."

In each of the foregoing cases there was a special and discriminating rate of taxation fixed by the respective charters.

That fact, however, did not in any way affect the result or impair the legislative power to grant the exemption. In the last of the above cases the exemption clause provides in express terms that there should be *levied* a state tax of a certain per cent upon the capital stock paid in, which was to be collected in the same way and at the same time as other taxes are by law collected. This was a special and discriminating rule of taxation for this company; yet it was held by the Supreme Court of Tennessee to be "a contract whose obligation may not be violated by subsequent revenue laws or otherwise."

These cases meet the distinction which is attempted to be made between an exemption and a special and discriminating rule of taxation. There is no foundation for the position that they were exemptions or immunities from taxation, while the provision in the present case is something different, which counsel for defendants in error choose to designate as a special or discriminating rule of taxation. Names and designations do not change the character of the provision in question.

The charter granted the Mobile and Ohio Railroad Company in the State of Mississippi, almost concurrently with its Tennessee and Alabama charters, extended the period of exemption until the company was paying an interest of eight per cent per annum on its cost. The attempt to tax it before it had paid any interest on its cost was held to be invalid, the Supreme Court saying, in *Mobile and Ohio Railroad Co. v. Mosley*, 52 Miss. 129: "We think the language of the section susceptible of no other construction than that the corporation is to be exempted from all taxation until by its earnings it shall pay an annual interest of eight per cent upon that portion of its road sought to be taxed, after which period its road shall be subject to taxation at the rate per cent that lands are taxed by the general revenue laws of the State then in force. If the language employed seems awkward, it is not for us, by verbal refinement, to strip it of its manifest meaning and intention. . . . The claim of exemption can only be successfully met in this case, so far as the point now under

consideration is concerned, by answer and proof showing that, in point of fact, the earnings of that portion of the road located in Mississippi have been sufficient to pay an annual interest of eight per cent upon the capital expended in the construction thereof."

We do not deem it necessary to consider the further point urged by counsel for defendants in error that the exemption clause in question is in conflict with the Fourteenth Amendment of the Constitution of the United States. That amendment conferred no new and additional rights, but only extended the protection of the Federal Constitution over rights of life, liberty, and property that previously existed under all state constitutions. The general object and purpose of the amendment is set out in *Bell's Gap Railroad* v. *Pennsylvania*, 134 U. S. 232, 237, and *Home Ins. Co.* v. *New York*, 134 U. S. 594, 607, and need not be again gone over.

In dealing with an exemption from taxation, like that under consideration, good faith is required on the part of both parties to the contract. While the State may not impair or restrict its operation, neither may the railroad company enlarge it at will and without limitation. It is not shown that the railroad company has made any improper or fictitious increase, either of its capital stock or of its bonded indebtedness. On the contrary, the proof establishes that the par value of the 53,206 shares of capital stock outstanding was realized therefor, dollar for dollar, and this amount of capital stock, together with the existing bonded indebtedness of the company, represents the *cost* of constructing and equipping the railroad. The legislature, in granting the exemption in question, doubtless had in contemplation the cost of the enterprise, and may have intended the immunity from taxation to be estimated on that basis, as in the Mississippi charter.

But however this may be, in sustaining the validity of the exemption in the present case we do not mean to be understood as holding that the railroad company has the right in its discretion, hereafter, to issue additional capital stock, or to increase its bonded indebtedness, even for legitimate pur-

poses, and have the same taken into consideration upon the question of its liability for taxation under the eight per cent dividend clause of the charter.

Our conclusion upon the whole case, which has received careful consideration, is that the decree of the Supreme Court of the State declaring the exemption clause of the company's charter void, and holding the statutes of the State, under which the taxes sought to be collected were levied, to be valid and constitutional, was erroneous.

*Judgment reversed and cause remanded to the Supreme Court of the State of Tennessee for further proceedings not inconsistent with this opinion.*

MR. CHIEF JUSTICE FULLER, with whom concurred MR. JUSTICE GRAY, MR. JUSTICE BREWER, and MR. JUSTICE SHIRAS, dissenting.

In my opinion, the judgment of the Supreme Court of Tennessee should be affirmed. It is well settled that the taxing power of a State cannot properly be held to have been relinquished in any instance, unless the deliberate purpose of the State to that effect clearly appears. Exemption therefrom is in derogation of the sovereign authority and of common right, and, therefore, not to be extended beyond the exact and express requirements of the grant, construed *strictissimi juris.* An exemption is claimed in this case under the eleventh section of the company's charter from the State of Tennessee, which reads: "That the capital stock of said company shall be forever exempt from taxation, and the road, with all its fixtures and appurtenances, including shops, warehouses and vehicles of transportation, shall be exempt from taxation for the period of twenty-five years from the completion of the road, and no tax shall ever be laid on said road or its fixtures which will reduce the dividends below eight per cent." The reasonable meaning of this section seems to me plainly to be that the capital stock is exempted forever, and the road, its fixtures, etc., for twenty-five years from the completion of the road, after which the exemption

has spent its force, and the road, fixtures, etc., become taxable, but the taxation must be so laid as not to reduce the dividends below eight per cent. The closing words prescribe a rule of taxation, and do not operate to continue an exemption which has expired by the express terms of the grant. What is forbidden is the laying of a tax in such manner as will produce a particular result. If this be not clear, as I think it is, yet any other construction is certainly not so, and doubt is fatal to the claim.

If the exemption exists as insisted, then the capital stock is free from taxation forever, and the road and its property is likewise free until, after deducting from its earnings all expenses, fixed charges, (which include interest on all its bonded debt,) and eight per cent upon its capital stock, there remains a surplus sufficient to pay all the taxes on its property according to the current rate. By the company's Alabama charter it was provided that the capital stock should not exceed ten millions; the Mississippi act set forth that act in full; the Tennessee act provided that the citizens of that State might subscribe to the amount of one-fourth of the capital. So far as the eleventh section is concerned, the amount of capital stock at any particular time, or what the taxes on the company's property in any particular year might be, is left undefined. The view contended for practically leaves it to the company to say when it may be taxed and when not; and while a State must be held to the bargains it makes, however improvident, it ought not to be held to have made such a contract as it is argued this is, unless its terms are so plain as not to be open to construction.

The difference between this provision and that in the company's charter in Mississippi, referring to the same subject, is significant. The latter reads: "That whenever any portion of said railroad shall be completed through this State, and is paying an interest of eight per cent per annum on its cost, *and not before*, such portion may be taxed the same percentage, and no more, upon the capital expended in the construction thereof, as lands in this State shall be taxed." That differ-

ence explains why the Supreme · Courts of Mississippi and Tennessee arrived at different conclusions.

In a certain line of cases, absolute exemptions from taxation have been recognized as secured in consideration of certain amounts to be paid, sometimes called taxes, although really merely the consideration paid as under contract; but the principle of commutation has no application here.

I concur with the Supreme Court of Tennessee in regarding the last part of the eleventh section as prescribing a special and discriminative rule of taxation; and as that court held it void as such, because in conflict with the equality and uniformity clause of the Constitution of 1834, that conclusion should be accepted.

I am constrained, therefore, to dissent from the opinion and judgment just announced, and am authorized to say that Mr. Justice Gray, Mr. Justice Brewer, and Mr. Justice Shiras concur in this dissent.