240 F.2d 428
 Don A. LOFTUS et al., Appellants,
v.
Norman P. MASON, Commissioner of Federal Housing Administration, Albert M. Cole, Housing and Home Finance Administrator, and Federal Housing Administration, Appellees.
SHIRLEY-DUKE APARTMENTS, SECTION I, Incorporated, et al., Appellants.
v.
Norman P. MASON, Federal Housing Commissioner, and Federal Housing Administration, Appellees.
 No. 7253.
 No. 7254.
 United States Court of Appeals Fourth Circuit.
 Argued November 20, 1956.
 Decided January 7, 1957.
 
 Armistead L. Boothe, Alexandria, Va. (Boothe, Dudley, Koontz & Boothe, Alexandria, Va., on the brief), for Don A. Loftus and others.
 Carl Budwesky, Alexandria, Va., for Shirley-Duke Apartments, Section I, Inc., and others.
 Melvin Richter, Atty., Dept. of Justice, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., L. S. Parsons, Jr., U. S. Atty., Norfolk, Va., and Marcus A. Rowden, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellees.
 Before PARKER, Chief Judge, SOBELOFF, Circuit Judge, and R. DORSEY WATKINS, District Judge.
 PARKER, Chief Judge.
 
 
 1
 These are appeals from decrees denying injunctions in two cases heard together in the court below and argued together here. The appellants, whom we shall refer to hereafter as plaintiffs, are Virginia corporations which had constructed apartment houses with the proceeds of loans guaranteed by the Federal Housing Administration, hereafter referred to as F.H.A. The cost of construction of these apartment houses was less than the proceeds of the loans and the corporations had distributed the excess received from the loans among their stockholders under the guise of dividends. The F.H.A., which had guaranteed the payment of the loans, held preferred stock of the plaintiffs giving it the right to remove the boards of directors and elect new boards for their control upon violation by them of charter provisions. Contending that the payment of these "dividends" was such violation, it was proceeding to exercise its right to remove the old boards and elect new boards of directors to assume control of plaintiffs for the purpose of suing to recover the "dividends" when these suits were instituted to enjoin such action on its part. From the entry of decrees denying injunctions on the ground that the F.H.A. was proceeding in accordance with its rights under the corporate charter and the law applicable in the premises, the plaintiffs have appealed.
 
 
 2
 There is no dispute as to the facts upon which the District Judge acted in denying the injunctions. The common stockholders of the plaintiffs had made no more than a token investment in their stock and the preferred stock issued to the F.H.A. was insignificant in amount and was issued for the sole purpose of giving the F.H.A. the right to police corporate activities for the protection of its rights as guarantor of loans.[1] The apartments were built entirely with funds obtained by plaintiffs on loans guaranteed by the F.H.A. Although these loans were supposed to be limited to 90% of cost and were limited to 90% of "estimated cost," 12 U.S.C.A. §§ 1701, 1743, they were in fact largely in excess of actual cost, so that a large sum remained which plaintiffs proceeded to distribute as "dividends" to common stockholders whose investment was insignificant in comparison with the amount thus paid to them out of the proceeds of the loans.[2] The pertinent facts were thus correctly and succinctly stated by the trial judge:
 
 
 3
 "To encourage the erection of low cost rental housing the Congress of the United States authorized the Federal Housing Administration to insure repayment of loans made for that purpose up to 90% of the estimated cost of the projects. Under this law the Beverley Manor corporations and the Shirley-Duke corporations obtained loans, on their notes secured by mortgages on the properties and insured by the Administration in the sum of $8,826,400 and $13,746,000 respectively. The actual cost of the completed project of Beverley Manor was $762,654.53 less than its insured loan and of the Shirley-Duke $1,878,937.16 below its insured loan. However, the full proceeds of the loans had been received by the corporations, and soon after the completion of the projects the corporations disbursed these remaining moneys — the difference between the actual cost of the projects and the insured loans — to its stockholders as dividends. These differences were made apparently available for dividends by carrying the moneys into `surplus', on the corporation's balance sheet, through a write-up, on a reappraisal, of the valuation at which the projects were entered. The Federal Housing Commissioner, being of the opinion that the corporate charters prohibited the payment of dividends out of any funds or assets except earnings, formally declared the instant appropriations violations of the charters. The court concurs — the insured moneys were not available for dividends.
 
 
 4
 "As a part of the insurance plan the Commissioner had acquired at a nominal price all of the preferred stock of each corporation. Each charter provided that any violation of its terms should be considered a default on the part of the corporation; and upon any such default the charter empowered the Commissioner, as the sole preferred stockholder, to remove the board of directors and elect a new set of his choice. On receipt of notice of his intention to invoke this sanction, the corporations brought these suits to enjoin his proposed action." [139 F.Supp. 208.]
 
 
 5
 The District Judge denied the injunction on the ground that the F.H.A. was acting within its rights under the corporate charter, the pertinent provisions of which are as follows:
 
 
 6
 "Article IV. * * * (b) The net earnings of the corporation, after providing therefrom dividends on First Preferred Stock and on the Second Preferred Stock as hereinabove provided, and all reserves hereinafter required, may be applied each year in payment of dividends to the holders of Common Stock or may be applied or used in the redemption of the Second Preferred Stock as hereinafter provided. (No second preferred stock was ever issued.)
 
 
 7
 * * * * * *
 
 
 8
 "Article V. The Corporation shall not without prior approval of the holders of a majority of the shares of First Preferred Stock, given either in writing or by vote at a meeting of the First Preferred Stockholders called for that purpose (a) assign, transfer, dispose of or encumber any real or personal property, including rents, except as specifically permitted by the terms of the mortgage or deed of trust, * * *".
 
 
 9
 We are in accord with the holding of the District Judge for reasons adequately stated by him in his memorandum; and little need be added to what is there said. The charter provisions above quoted are but two of numerous provisions designed to give the F.H.A. control over building corporations whose operations were to be conducted for the profit of common stockholders but at the risk of F.H.A., which guaranteed the payment of loans from which the real invested capital of the corporations was derived. The corporate charters, the form of which was prescribed by F.H.A. limited strictly what might and what might not be done by the corporations so long as the insured loans remained unpaid. They were forbidden to engage in any business other than the building and renting of the apartment buildings for which the loans were obtained. They were forbidden to retire the preferred stock held by the F.H.A. No dividends were to be paid, except with the consent of a majority of each class of shares, until all amortization payments under the mortgage had been paid and a reserve fund created. In case of liquidation, all debts of the corporations were to be first paid, including the insured mortgage, and the net assets were then to be applied to the payment of the first and second preferred stock before any distribution could be made to the common stock. The corporations might not, without the approval of F.H.A. as holder of the first preferred stock, dispose of or incumber any real or personal property, except as specifically permitted by the insured mortgage, or "remodel, reconstruct, demolish or subtract from the premises", or charge rents in excess of schedule, or require as a condition of occupancy of any unit in the project the purchase of stock, or consolidate or merge with any other corporation, go into voluntary liquidation or carry into effect a plan of reorganization, or effect any change in capital stock. As said by the District Judge:
 
 
 10
 "This charter gives the preferred stockholder, for the period of the insurance, complete oversight of the corporation, its real and personal property, its revenues, and its disbursements. Under its terms the only corporation funds or property distributable or alienable, except for operating costs, without the approval of the preferred stockholder are net earnings."
 
 
 11
 Among the limitations upon the powers of the corporations is the restriction of section IV(b), quoted above, providing that net earnings may be applied in the payment of dividends. The general rule is that dividends may be paid only from net earnings. 13 Am. Jur. p. 650 et seq.; Mobile & Ohio R. Co. v. State of Tennessee, 153 U.S. 486, 496-497, 14 S.Ct. 968, 38 L.Ed. 793. In some states, however, payment of dividends is permitted from net assets in excess of capital, and for this reason it was probably thought wise to designate in the charter the source from which dividends might be paid. At all events, in view of the strict limitation provided throughout the charter as to the handling of the financial affairs of the corporation, it is not reasonable to construe the quoted language other than as a limitation upon the payment of dividends from any source other than net earnings. The maxim "expressio unius est exclusio alterious" is clearly applicable. Where the charter provides explicitly that, in case of liquidation, the net assets shall be applied to the payment of the mortgage before anything can be paid on stock, it would be absurd to permit net assets to be siphoned off to stockholders in a partial liquidation under the guise of dividends, and particularly is this true where the net assets thus transferred to stockholders constitute mere borrowed capital for which the insured mortgage has been executed.
 
 
 12
 It is said that the law of Virginia, under which the corporations were chartered, permits the payment of dividends from assets other than net earnings;[3] but there is nothing in the law of Virginia which invalidates the limitation on dividends which the parties themselves have placed in the charter of the corporation and which, as we have seen, limit dividends to net earnings.[4] The same may be said of the by-law of the corporations relied on by appellants, in addition to the fact that it is expressly made subject to the limitations of the charter.[5]
 
 
 13
 In view of what has just been said, we deem it unnecessary to discuss whether, in the absence of the charter limitation, it would be proper to pay dividends from capital assets upon a reappraisement of corporate property such as was had here. It may properly be observed, however, that in application of sound accounting principles dividends may ordinarily be declared only out of actual earnings or profits and not upon a theoretical estimate of an unrealized appreciation in value of assets. See Berks Broadcasting Co. v. Craumer, 356 Pa. 620, 52 A.2d 571; Kingston v. Home Life Ins. Co. of America, 11 Del.Ch. 258, 101 A. 898; La Belle Iron Works v. United States 256 U.S. 377, 393, 394, 41 S.Ct. 528, 65 L.Ed. 998. Cf. Randall v. Bailey, Sup., 23 N.Y.S.2d 173; 262 App. Div. 844, 29 N.Y.S.2d 512; 288 N.Y. 280, 43 N.E.2d 43. And see United States v. Riely, 4 Cir., 169 F.2d 542, 544.
 
 
 14
 We think, also, that the distribution to the stockholders of the excess funds derived from the mortgage was a violation of section V(a) of the charter quoted above, which forbids the corporation, without the prior approval of the preferred stockholders, to "assign, transfer, dispose of or encumber any real or personal property, including rents, except as specifically permitted by the terms of the mortgage or deed of trust." It is argued that the quoted provision applies only to mortgaged property, but no such limitation is contained in the language and it is not reasonable that it be implied in view of the purpose to protect the F.H.A. as insurer of the loan. The transfer or incumbrance of property of the corporation, even though not covered by the mortgage, might well result in loss to the F.H.A. as insurer and would certainly defeat to a great extent the control it was supposed to have over the financial affairs of the corporation. Appellants profess to find comfort in the excepting clause in the language quoted; but we see no comfort for them there. That clause merely excepts from the general prohibition transfers provided for in the mortgage, such as the right reserved in the Beverley Manor mortgage to deed and dedicate to the City of Columbus certain ways and easements for street purposes. The charter was a model form prescribed by F.H.A. for general use, and this exception was evidently phrased in general terms to cover situations where transfer of property would be necessary and foreseen at the time of the execution of the mortgage, although not foreseen at the time the form was drafted. In such cases provision for transfer in the mortgage would release the property from the limitation of the charter as well as the mortgage lien.
 
 
 15
 To distribute among the common stockholders funds of the corporation which had been borrowed for the express purpose of building the apartments, was clearly to deplete the assets available for the payment of the insured loan in manifest violation of this charter provision inserted for the protection of the insurer. It is no answer to say that such protection is not accorded in the case of loans to individual mortgagors; for, in the case of insured loans to individuals, the F.H.A. protects itself by an appropriate agreement directed to that form of transaction. Furthermore, funds received by an individual increase his net worth and thus add to his ability to repay the loan. Funds received by a corporation have this effect only so long as they remain the property of the corporation.
 
 
 16
 Appellants contend that the legislative history of section 608 of the National Housing Act, 12 U.S.C.A. § 1743, the section under which the loans here were insured, contemplated the insuring of loans and the receipt by mortgagors of proceeds thereof in excess of the value of the property mortgaged as security. We do not so read the history of that section. It is true that at the time of various amendments to and extensions of the Housing Act, there was discussion of the fact that insured loans were in some cases obtained in excess of the value of the property mortgaged; but this was recognized as an abuse which was to be guarded against, not a practice which was to be encouraged. It is true also that there was discussion of the fact that actual cost might be reduced below estimated cost by savings resulting from elimination of some items of the estimates, such as architects' and builders' fees; but there is absolutely nothing that we have seen in the congressional history to which our attention has been called, or elsewhere, which evidences an intention on the part of Congress that any part of the proceeds of insured loans might be distributed as dividends among the stockholders of borrowing corporations. A subsequent amendment of the statute provided that any excess of the proceeds of the insured loan over the cost of the property mortgaged should be applied in partial liquidation of the loan. While such application was not required by law at the time the loans here were obtained, there was nothing to prevent it; and this is manifestly what should have been done with the excess. In the absence of such requirement, the F.H.A. properly relies upon the provisions of the charter to prevent such distribution of corporate assets and, where such distribution has been had, properly takes steps to recover the funds that have been improperly distributed. If recovered, they can be paid on the loans in partial liquidation or can be held and invested by the corporations. The insured loans have many years to run, years in which no one can foresee the course of prices and values. The possession by the mortgagor corporations of these assets will add to the protection of the risks assumed by the F.H.A. in the insuring of the loans from which the assets were derived.
 
 
 17
 It is argued that the F.H.A. is estopped to insist upon its rights under the charters because it has countenanced the distribution of proceeds of mortgages as dividends in other cases[6] and because it has received from plaintiffs dividends on the preferred stock held by it. There is no merit in this contention. An agency of the government is not estopped from insisting on rights under one contract because it has failed to insist on rights under others. So far as the dividends on preferred stock are concerned, these amounted to five cents per share on the preferred stock, or $20 from the four Beverley Manor corporations and $30 from the six Shirley-Duke corporations, and might well be disregarded under the de minimis principle. The finding of fact of the District Judge with respect to the matter, which is not attacked here so far as its factual basis is concerned, is as follows:
 
 
 18
 "The evidence does not establish an estoppel to preclude the Commissioner from moving against the corporations. His request of them for, and his receipt from them of, an annual dividend of $5.00 each upon his preferred stock does not constitute a concurrence in the dividend distribution. A preponderance of the evidence does not prove that he was then acting with full knowledge of the source of the dividend. If a dividend had been declared, he was required to collect the amount due on the preferred stock. In doing so he cannot be presumed to have upheld the legality of the distribution."
 
 
 19
 In addition, we agree with the District Judge that the principles of estoppel cannot be invoked to preclude action in the public interest by an officer or agency of the government. Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10; United States v. Stewart, 311 U.S. 60, 70, 61 S.Ct. 102, 85 L.Ed. 40; Utah Power & Light Co. v. United States, 243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791.
 
 
 20
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 In the case of the Beverley Manor corporations the investment of common stockholders was only $4,000, the investment of the preferred stockholder, F.H.A., was $400 of preferred stock, whereas the amount of the loan which was insured by F.H.A. and from the proceeds of which the apartments were constructed, was $8,826,400. In the case of the Shirley Duke Apartments, the common stock was $6,000, the preferred $600, and the amount of the insured loan was $13,746,000
 
 
 [2]
 Upon stock in which one stockholder in Shirley-Duke Apartments had invested $90, he received exceeding $62,000 in this "dividend". The total of the proceeds of the insured mortgage loan thus distributed to common stockholders by the Shirley-Duke corporations was $1,878,937.16, although the investment of these stockholders in the corporations was only $6,000
 
 
 [3]
 The Virginia statute relied on is carried forward as 13-206 of the Virginia Code of 1950 and is as follows:
 "§ 13-206. Capital defined; dividends; liability of directors for declaration of dividends. — The board of directors of every corporation shall, unless otherwise provided in its charter, certificate of incorporation or articles of association, or in any amendment thereto, have power to declare and pay dividends upon the shares of its capital stock out of its net earnings, or out of its net assets in excess of its capital as hereinafter defined. The capital of a corporation shall be the sum of the consideration received by the corporation in payment for its shares of stock, whether with or without nominal or par value, plus such amounts as from time to time by resolution of the board of directors may be transferred to capital and/or less such amounts as may be transferred from capital by a reduction thereof, * * *".
 
 
 [4]
 Even if the Virginia statute were applicable, a grave question would arise as to whether dividends might properly be paid from capital borrowed for an express purpose, as were the funds here. The mortgage recites: "That the funds to be advanced herein are to be used in the construction of certain improvements on the lands herein described"
 
 
 [5]
 The provision of the by-laws relied on is as follows:
 "Dividends. 42. Subject to the provisions of the Certificate of Incorporation, the directors may declare and pay dividends on the shares of the capital stock of the corporation out of the net earnings or out of its net assets in excess of its capital as defined by section 3840 of the Code of Virginia, at such times and in such amounts as the Board of Directors may from time to time designate. No dividend shall be paid in whole or in part from contributed surplus, upon any shares of stock without par value without written notice being given to stockholders receiving the same, at the time of payment of any such dividend." (Italics supplied.)
 
 
 [6]
 With respect to this, the argument is made that while this may not strictly be an estoppel it is binding upon the F.H.A. as a "contemporaneous interpretation" of the charter provisions