# YAZOO AND MISSISSIPPI VALLEY RAILROAD COMPANY v. THOMAS.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSISSIPPI.

No. 1086. Submitted October 28, 1889. — Decided November 18, 1889.

This court has jurisdiction to review, on writ of error, a decision of the highest court of a State, in which it is decided that a provision in a tax act of the State that it shall not apply to railroad corporations exempted from taxation by their charters is not applicable to a particular corporation, party to the suit, although its charter contains a provision respecting exemption from taxation.

Exemptions from taxation, being in derogation of the sovereign authority and of common right, are not to be extended beyond the express requirements of the language used, when most rigidly construed.

The appellant's charter provided that it should " be exempt from taxation for a term of twenty years from the completion of said railroad to the Mississippi River, but not to extend beyond twenty-five years from the date of the approval of this act:" *Held*, that the exemption was intended to commence from and after the completion of a railroad to the Mississippi River, and was to continue thereafter for twenty years if the road was completed to the river in five years from the date of the approval of the act, but liable to be diminished by whatever time beyond five years was consumed by the completion of the road to the river.

The preamble to a statute is no part of it, and cannot enlarge or confer powers, or control the words of the act unless they are doubtful or ambiguous.

*Vicksburg, Shreveport & Pacific Railway Co.* v. *Dennis*, 116 U. S. 665, approved and applied.

THE case, as stated by the court in its opinion, was as follows:

The Yazoo and Mississippi Valley Railroad Company was incorporated by an act of the Mississippi legislature, approved February 17, 1882, the preamble and sections 2, 8, 13 and 14 being as follows:

"Whereas, the construction of railroads to, in, through and along the Mississippi River basin, and the Yazoo and Sunflower River basins, penetrating these and other alluvial lands in this State, west of the Chicago, St. Louis and New Orleans Railroad, and connecting them by railroads and branches with other railroads west, east, north and south, is deemed and here-

by declared to be a work of great public importance, and, in strict accordance with the true policy and interest of this State, should be encouraged by legislative sanction and liberality; and, whereas the physical difficulties of constructing and maintaining railroads to, across, along or within either the Mississippi, Sunflower, Deer Creek or Yazoo bottoms or basins, or the other alluvial lands herein referred to, are such that no private company has so far been able to establish a railroad and branches developing said basins and alluvial lands, and connecting them with the railroad system of the country: Now, therefore, in order to induce the investment of capital in the construction, maintenance and operation of such a railroad and branches, and thus develop the resources and wealth of this State:"

"SEC. 2. *Be it further enacted*, That the said corporation shall also have, and it is hereby authorized and invested with the right and power to build and construct, and thereafter to use, operate, own and enjoy a railroad or railroads, with one or more tracks, into, along and across that part of the State of Mississippi lying between the Mississippi River and the Chicago, St. Louis and New Orleans Railroad, on such line or lines as shall be deemed best by the board of directors of the company hereby chartered; one of said lines, or a branch therefrom, to reach the Mississippi River at or near a point opposite Arkansas City if practicable, so as to connect such point on the east bank of the Mississippi River with some point or points on the line of the Chicago, St. Louis and New Orleans Railroad; one of said lines of railroad, or a branch therefrom, to be extended to or pass through Yazoo City, Mississippi; and said company shall have the right and power, and are hereby authorized, to build one or more branches or lines of railroads between the Mississippi River and Deer Creek, and between Deer Creek and the Sunflower River, and between the Sunflower and Yazoo Rivers, in the direction of or to the north line of this State, and extend the same, or any one thereof, in the direction of or to the south boundary line of this State, as shall from time to time, in the judgment of said company, be deemed proper; and shall also be authorized to construct and operate such spurs or laterals from or along such main line or branches

not exceeding one hundred miles in length, as may from time to time be necessary or proper to fully develop said country lying west of the Chicago, St. Louis and New Orleans Railroad, and east of the Mississippi River, in this State; and the said company, as soon as and whenever, from time to time, they have located said line or lines of railroad or branches, spurs or laterals thereto, or any of them, shall file in the office of the secretary of State a statement showing the general line thereof as far as the same has up to that time been located."

" SEC. 8. *Be it further enacted*, That in order to encourage the investment of capital in the works which said company is hereby authorized to construct and maintain, and to make certain in advance of such investment, and as an inducement and consideration therefor, the taxes and burdens which this State will and will not impose thereon, it is hereby declared, that said company, its stock, its railroads and appurtenances, and all its property in this State, necessary or incident to the full exercise of all the powers herein granted — not to include compresses and oil mills — shall be exempt from taxation for a term of twenty years from the completion of said railroad to the Mississippi River, but not to extend beyond twenty-five years from the date of the approval of this act; and when the period of exemption herein prescribed shall have expired, the property of said railroad may be taxed at the same rate as other property in this State. All of said taxes to which the property of said company may be subject in this State, whether for county or State, shall be collected by the treasurer of this State and paid into the state treasury, to be dealt with as the legislature may direct; but said company shall be exempt from taxation by cities and towns."

" SEC. 13. *Be it further enacted*, That unless said company shall construct and have in operation twenty miles of railroad within three years from the passage of this act, the legislature shall have the right to declare this charter forfeited.

" SEC. 14. *Be it further enacted*, That all acts in conflict with this act, or any part thereof, be and the same are hereby repealed, and that this act take effect and be in force from and after its passage, the public welfare requiring it." Laws of Mississippi, 1882, 838.

By section one, the corporation is authorized to hold, purchase, receive and enjoy real and personal estate in Mississippi and other States, however acquired; and to sell, rent, lease, mortgage or otherwise dispose thereof.

By section five, it is empowered to consolidate with any other company or companies, and acquire or lease other railroads in or out of the State for a term of years or in perpetuity; to do an express business over its own and other lines of railroads and steamboats or other conveyances in and out of the State; and to acquire, put up, use and operate a line or lines of telegraph in this or other State or States; by section six, to fix its own rate of charges, not to exceed a maximum indicated, provided, it may make special agreements with shippers as to lumber, coal, iron, etc., and other freights transported in car loads, without discrimination; by section seven, to enter on state lands anywhere and take in fee simple one hundred feet on each side of the centre of any of its tracks, as right of way; to use any rocks, timber, earth, sand, gravel, water or other materials anywhere found on such state lands; to build bridges across any stream whether navigable or not, with power and authority "to build, construct, maintain and operate of itself or with others, in or out of this State, a ferry across, or a tunnel under, or a bridge over, the Mississippi River at any point within this State, where its railroads, branches, laterals or spurs may reach said river;" to acquire all lands and materials necessary for landings, wharves, inclines or approaches thereto; to establish such landings, wharves, etc., as may be necessary or convenient in transporting freights, passengers, cars or rolling stock, loaded or unloaded, upon and across said Mississippi River, or any other river or body of water within this State; and to own, use and operate, and control by itself or others, "all such steamboats, ferries or other water craft as are or may be convenient or necessary in crossing such water, so as to develop trade over said lines of railroad;" by section nine, to insure persons and property, or either, transported or to be transported over any part of its line, and all other property coming into the possession or control of said company for transportation or storage,

and to charge reasonable compensation for such insurance or storage; to erect or acquire and use such depots, storage houses, wharves, etc., as shall be necessary or convenient; and to construct and operate compresses and oil mills; by section ten, to run its railroad, branches, laterals or spurs into the corporate limits of any incorporated town or city; and to build and operate its tracks, across or along any streets of such incorporated municipality; and by section eleven, the board of directors, stockholders, executive committee, officers and agents of the company may hold their meetings and transact the company's business in or out of the State, and establish such offices as they deem best in or out of the State, and all acts done by said company, its officers or agents, out of the State shall be of the same force and effect as if done within the State.

By the Code of Mississippi of 1880, under the heading "Taxation of Railroads," taxation was provided for in certain sections, summarized by counsel, in substance as follows:

"Section 597 provides that each railroad company owning and operating a railroad in this State shall, on or before the third Monday in August in each year, file with the auditor of public accounts a complete schedule of all its property, real or personal, setting forth the length in miles or fractions of its road-bed, switches and side tracks, and showing the number of miles and fractions lying in the State, and in each county, and in each incorporated town, and the value of the whole, and each part as herein subdivided, capital stock, bonded indebtedness, the gross amount of receipts, the rolling stock, depot buildings, workhouses and machine shops, car shops, and stationary machinery, and the county and town in which situated, and the land on which they are situated, together with all other real, mixed and personal property.

"Section 599 requires: The auditor, when this schedule has been filed, and also in cases when it has been refused, is directed to notify the governor of the State of the fact, who shall proceed to convene the auditor, treasurer and secretary of State, who, thus convened, shall assess the value of each railroad for purposes of taxation and shall certify the same to the auditor of public accounts.

" Section 600 provides the means of ascertaining the items and value of the property. The board is directed to value the entire road and property, that value is to be divided into the number of miles in the State, and the valuation for each county is to be according to the number of miles of the road in each. The number of miles for the State shall be the product for state taxes, and the number of miles in each county. the product for county taxes; and, having thus ascertained the sums to be taxed, they shall certify the same and the facts to the auditor.

" Under section 601 may be added ten per cent on the amount of taxes assessed against railroad companies failing or refusing to file schedules as directed by section 597, or filing unfair ones.

" Section 603 provides that when the valuation so ascer · tained and certified has been furnished to the auditor, he shall ascertain the taxes due the State and counties, and notify the companies of the amounts due to the State, by letter or other· wise, and shall certify the sums to be taxed in the several counties for county purposes to the clerk of the Chancery Court of . the county, and the amount to be taxed by cities and towns to the mayor thereof, and the sums so certified shall be entered on the collector's books, to be collected as other taxes; and by section 604 the auditors shall collect the taxes due the State by distress warrants issued to any sheriff, authorizing the seizure and sale of personal property in the county : and, should the personal property be insufficient, the auditor may sell the entire road and franchise to the highest bidder, and the purchaser shall be put in possession.

" Section 605. The county taxes are to be collected as all other taxes.

" Section 606. Railroad property situated in any city or incorporated town may be taxed for city or town purposes, upon a valuation thereof made upon the same basis as the property of individuals, and this section is to apply to the foregoing as well as to the following modes of taxation herein provided for.

" Section 607 provides that every railroad accepting this

act, and annually paying to the auditor of public accounts the taxes hereinafter provided for, and signifying its acceptance in writing, shall be exempt from all the foregoing provisions, except section 606 in relation to cities and towns, and such payment shall be in full of all state and county taxes ; fifty per cent of the amount paid to be placed to the credit of the counties through which the railroad may pass, to be divided amongst them according to the number of miles in each. Lands owned by such railroad companies, and not used in operating the roads, shall be taxed as other property and for all purposes.

"Section 608. Each railroad company whose line is in whole or in part in this State shall, if it accepts the provisions of this act, pay to the state treasurer, on the warrant of the auditor, on or before the 31st day of December, in each and every year, a privilege tax as follows, to wit : [Here follows a list of the existing railroads in the State, their names being given and the sums required of each.] *Provided*, That no railroad company shall be subject to taxation under this chapter while the same is in process of construction, but if any part of any road shall be finished and used for profit, the part so used shall be taxed although the whole road may not be finished." Code Mississippi, 1880, 194 *et seq.*

In 1884, section 604, so far as it provided for putting a purchaser of a railroad under the tax sale therein mentioned, in possession of the road, was repealed, and section 607 was so amended as to give to the counties two-thirds, instead of fifty per cent, of the privilege tax.

Section 608 was amended so as to read :

" Each railroad company whose line is in whole or in part in this State shall, if it accepts the provisions of this act, pay to the state treasurer, on the demand of the auditor, on or before the fifteenth day of December in each and every year, a privilege tax as follows, to wit : [then follow the names of the companies, not including appellant.] All the railroads not named herein, and not exempt from taxation by their charters, sixty dollars per mile : *Provided*, That no railroad company shall be subject to taxation under this chapter while

the same is in process of construction — but if any part of any road shall be finished and used for profit, the part so finished shall be taxed, although the whole road may not be finished — nor where the same is now exempt from taxation by its charter." Laws Mississippi, 1884, 29, 30, c. 22.

In 1886, the privilege tax for all railroads was increased twenty-five per cent. Laws Mississippi, 1886, 23.

April 3, 1888, the legislature of Mississippi passed an act entitled "An act to provide for the assessment of past due and unpaid taxes on railroads which have escaped the payment thereof," the first section of which is in these words :

" That every railroad which has failed to pay the taxes for which the same was liable, for any year for which it was so liable, such railroad not being exempt by law or its charter from taxation for such years, and so being liable to taxation, shall be assessed for, and shall pay an *ad valorem* tax, to be assessed as hereinafter provided, unless such railroad shall, within sixty days after the passage of this act, pay the taxes for which the same was liable according to its charter, or shall pay the privilege taxes for which the same was liable, as follows : If a standard or broad gauge road, for the years prior to 1884, eighty dollars per mile ; for the years 1884 and 1885, one hundred dollars per mile ; and for the years 1886 and 1887, one hundred and twenty-five dollars per mile ; and, if a narrow gauge, or not standard or broad gauge road, for the years prior to 1884, forty dollars per mile ; for the years 1884 and 1885, fifty dollars per mile ; and for the years 1886 and 1887, sixty-two dollars and fifty cents per mile." Laws of Mississippi, 1888, 49, c. 28.

Section two provides that sixty days after the passage of the act, the tax-collectors of the several counties through which any railroad runs, which has failed to pay the taxes for which it was liable, and failed to avail itself of the provisions of the first section and paid taxes according thereto, shall assess, as additional assessment, every such railroad in their respective counties for the several years for which taxes have not been paid, on lists duly prepared for that purpose by the Railroad Commission, whose duty it shall be to prepare such lists imme-

diately after the passage of the act: and then proceeds with other particulars in relation to the valuation, assessment and collection, referring to various sections of the code, so far as applicable.

Under this act, taxes, amounting to $58,000, were assessed against appellant for the years 1885, 1886 and 1887, in respect to parts of its line which were operated in those. years · for business as a carrier, the road not having been completed to. the Mississippi River.

On the 17th of July, 1888, appellant filed its bill in the Chancery Court of Hinds County against Thomas and others, the appellees here, who were sheriffs and tax-collectors of the several counties through or into which the road extended, to enjoin the collection of the taxes so assessed upon its railroad property, as unauthorized and illegal. The illegality complained of was, that the tax was in violation of the company's charter, by which it was insisted, the property of the company incident to its railroad operations was exempted from taxation ;. and it was averred that the charter, as respects the exemption claimed, was a contract " irrevocable and protected. by the contract clause of the Constitution of the United States ; that the unwarranted application of the general laws subsequently passed, as well as the application of the general laws in force at the time, is equivalent to a direct repeal of the charter exemption ; that it is an effectual abrogation of its privilege of exemption by means of authority exercised under the State."

To this bill the defendants demurred. The demurrer was sustained, and the bill dismissed by the Chancery. Court, and the complainant appealed to the Supreme Court of the State of Mississippi. The decree of the court below was affirmed by that court, and to this judgment of affirmance the plaintiff in error sued out the pending writ of error. The opinion of the Supreme Court was delivered by · Arnold, C. J., and is as follows :

" Statutes exempting persons or property from taxation, being in derogation of the sovereign authority· and of common right, are, according to all the authorities, strictly construed.

As taxation is the rule and exemption the exception, the intention to create an exemption must be expressed in clear and unambiguous terms, and it cannot be taken to have been intended when the language of the statute on which it depends is doubtful or uncertain. Legislation which relieves any species of property from its due proportion of the burdens of the government must be so clear that there can be neither reasonable doubt nor controversy in regard to its meaning. Cooley on Taxation, 2d ed. 204; *Bailey* v. *Magwire*, 22 Wall. 215 ; *Vicksburg &c. Railroad* v. *Dennis*, 116 U. S. 665 ; *Frantz* v. *Dobson*, 64 Mississippi, 631.

"In the light of these principles we are unable to find anything in the charter of appellant to warrant the exemption claimed in this case. It is quite plain to us that the exemption created by section eight of appellant's charter, Acts of 1882, p. 847, was intended to commence from and after the completion of a railroad to the Mississippi River and was to continue thereafter for twenty years if the road was completed to the river in five years from the date of the approval of the act, but liable to be diminished by whatever time beyond five years was consumed in the completion of the road to the river.

"At the time appellant's charter was enacted, railroads in process of construction were not taxable under the general laws of the State, (Code, § 608,) and this may account for the charter providing exemption from taxation after the completion of the road and none during the period of its construction."

Together with arguments upon the merits a motion to dismiss was also submitted.

*Mr. James Fentress* and *Mr. W. P. Harris*, (with whom was *Mr. J. B. Harris* on his brief,) for plaintiff in error, submitted on their briefs.

*Mr. Marcellus Green*, (with whom was *Mr. S. S. Calhoon* on the brief,) for defendants in error, submitted on his brief. *Mr. T. M. Miller* also filed a brief for the same.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

The Supreme Court of Mississippi did not put its decision upon the ground that it was not competent under the state constitution for the State to contract with the company that the latter should not be subjected to taxation, but upon the ground that the exemption claimed could not be allowed. The taxes in question were assessed under the act of 1888, and if the charter of the company, which became a law on the 17th of February, 1882, inhibited such taxation, then this court has jurisdiction to re-examine the conclusion reached. Although by the terms of the act of 1888 the taxes therein referred to were not to be levied as against a railroad exempt by law or charter, yet the Supreme Court held that this company is not exempt, and is embraced within the act; so that if a contract of exemption is contained in the company's charter, then the obligation of that contract is impaired by the act of 1888, which must be considered, under the ruling of the Supreme Court, as intended to apply to the company. The result is the same, although the act of 1888 be regarded as simply putting in force revenue laws existing at the date of the company's charter, rather than itself imposing taxes, for if the contract existed those laws became inoperative, and would be reinstated by the act of 1888. The motion to dismiss the writ of error is therefore overruled.

By the eighth section of the company's charter it was declared "that said company, its stock, its railroads and appurtenances, and all its property in this State necessary or incident to the full exercise of all the powers herein granted —not to include compresses and oil mills—shall be exempt from taxation for a term of twenty years from the completion of said railroad to the Mississippi River, but not to extend beyond twenty-five years from the date of the approval of this act; and when the period of exemption herein prescribed shall have expired, the property of said railroad may be taxed at the same rate as other property in this State." If the provision had terminated with the words "Mississippi River" it

would not be open to argument in this court that the exemption claimed did not commence until the river was reached.

In *Vicksburg, Shreveport & Pacific Railway Company* v. *Dennis*, 116 U. S. 665, it was held that a provision in a railroad charter by which "the capital stock of said company shall be exempt from taxation, and its road, fixtures, workshops, warehouses, vehicles of transportation and other appurtenances, shall be exempt from taxation for ten years after the completion of said road within the limits of this State," did not exempt the road, fixtures and appurtenances from taxation before such completion. It was argued there, as it is here, that the legislature, while exempting the railroad from taxation for ten years after its completion, could not have intended to subject it to taxation before its completion, and when its earnings were little or nothing; on the other hand, it was argued there, as it is here, that one reason for defining the exemption of the railroad and its appurtenances from taxation, as "for ten years after the completion of said road," without including any time before its completion, was to secure a prompt execution of the work and to prevent the corporation from defeating the principal object of the grant, and prolonging its own immunity from taxation by postponing or omitting the completion of a portion of the road; but this court said, speaking through Mr. Justice Gray: "Each of these arguments rests too much on inference and conjecture to afford a safe ground of decision where the words of the statute creating the exemption are plain, definite and unambiguous." It appeared there, as it does here, that the taxing officers of the State had omitted in previous years to assess the property, but it was held that such omission could not "control the duty imposed by law upon their successors, or the power of the legislature, or the legal construction of the statute under which the exemption is claimed." And the court took occasion to reiterate the well-settled rule that exemptions from taxation are regarded as in derogation of the sovereign authority and of common right, and, therefore, not to be extended beyond the exact and express requirements of the language used, construed *strictissimi juris*.

Tested by that rule, did the addition of the words "but not to extend beyond twenty-five years from the date of the approval of this act," operate to create an exemption of twenty-five years from the date of the act subject to being reduced to less than that if the road were completed to the river before the lapse of five years, but for twenty years at all events; or did it operate to reduce the term of the twenty years' exemption by so much as the completion of the road to the river took over five years? Upon the one view there would be a loss of exemption through rapidity of construction; in the other view, a gain, or, rather, the prevention of a loss. Does it appear by clear and unambiguous language that the State intended to surrender the right of taxation for twenty-five years? If the surrender admits of a reasonable construction consistent with the reservation of the power for a portion of the longer period, then for that portion it cannot be held to have been surrendered. Is not the construction that the exemption was to be for a term of twenty years, subject to a diminution of that term if the river were not reached in five years, as reasonable as the opposite construction; and if the latter construction be adopted, would it not be extending the exemption beyond what the language of the concession clearly requires? Can an exemption expressly limited to a term of twenty years after the accomplishment of a designated work, but not to extend beyond twenty-five years from a certain date, be read as an exemption for twenty-five years, but not to extend beyond twenty years from the completion of that work? It seems to us, notwithstanding the able and ingenious arguments of appellant's counsel, that these questions answer themselves, and that the exemption claimed cannot be sustained.

By the general law of the State of Mississippi in force at the time the charter of appellant was granted, it was provided that no railroad company should be subject to taxation while the same was in process of construction, but if any part of any road should be completed so as to be used for profit, the part so used should be taxed, although the whole road might not be finished. It is admitted that the taxes here were levied in respect to parts of the road which were in operation.

The second section of its charter empowered the corporation to build and construct, and thereafter use, operate, own, and enjoy a railroad or railroads into, along, and across that part of the State lying between the Mississippi River and the Chicago, St. Louis and New Orleans Railroad, "one of said lines, or a branch therefrom, to reach the Mississippi River at or near a point opposite Arkansas City if practicable, so as to connect such point on the east bank of the Mississippi River with some point or points on the line of the Chicago, St. Louis and New Orleans Railroad;" and by section seven it was empowered to "build, construct, maintain, and operate of itself, or with others, in or out of this State, a ferry across, or a tunnel under, or a bridge over, the Mississippi River, at any point within this State where its railroads, branches, laterals or spurs may reach said river;" and to acquire lands, etc., for landings, wharves, inclines, etc., and to establish said landings, wharves, inclines, etc., as might be necessary or convenient in transporting freights, passengers, etc., upon and across said Mississippi River. In our opinion it cannot be doubted that a principal object of the grant to the company was the building of a line across the State from the Chicago Railroad to the Mississippi River, and that the point of contact was to be opposite Arkansas City, if that were practicable. Five years was contemplated as sufficient to complete the road to the river, so that the twenty years' exemption should commence.

By the thirteenth section it was provided that the legislature might declare the charter forfeited, if twenty miles were not constructed and in operation within three years from the passage of the act. This indicates that the legislature did not assume that the line might probably be extended to the river in less than five years, and were not thereby induced to insert the twenty years as a limitation on the twenty-five. No reason is perceived for limiting the exemption to begin with the completion of the railroad to the Mississippi River, if it were intended that the exemption should be for more than twenty years at all events, commencing with the approval of the act.

The question when the property may be taxed is answered

by ascertaining when the period of the specified exemption begins, for until then the general law provided that while the road could not be taxed during the process of construction, such parts as were finished and in operation could be, though they might be for a time exempt under the charter after the line was completed to the Mississippi River. When the Mississippi River was reached then the period of exemption would begin; but how long it would continue would depend upon the length of time to elapse before the end of twenty-five years from the approval of the charter. And this disposes of the argument that it is immaterial whether the period of exemption is twenty or twenty-five years, because it is agreed that the property could not be taxed until the period of exemption, whatever that is, shall have expired, for that ignores the real inquiry, which is as to when the exemption commences.

Again, the preamble to the act is referred to by counsel, as sustaining their construction, because it is therein declared that the work is one of " great public importance," and "to be encouraged by legislative sanction and liberality," and that " the physical difficulties of constructing and maintaining railroads to, across, along or within either the Mississippi, Sunflower, Deer Creek or Yazoo bottoms or basins, or the other alluvial lands herein referred to, are such that no private company has so far been able to establish a railroad and branches developing said basins and alluvial lands, and connecting them with the railroad system of the country." But as the preamble is no part of the act, and cannot enlarge or confer powers, nor control the words of the act, unless they are doubtful or ambiguous, the necessity of resorting to it to assist in ascertaining the true intent and meaning of the legislature is in itself fatal to the claim set up. Indeed, what is therein stated appears to us to be quite as referable to the remarkably extensive powers granted as to the assignment of reasons for exemption from taxation.

It is true that it is stated in section eight, that, in order to encourage the investment of capital in the enterprise, and " to make certain in advance of such investment, and as inducement

and consideration therefor, the taxes and burdens which this State will and will not impose thereon," the exemption is thereby declared.     Yet if, notwithstanding that statement, the matter were left uncertain, that would not allow the court to make it certain by construction, and to remove ambiguity upon the presumption of a legislative intent contrary to the fixed presumption where the rights of the public are involved. In short, there can be no uncertainty in the result when the language used is construed, as it must be, in accordance with thoroughly settled principles.     After stating the exemption in controversy, section eight concludes as follows : " And when the period of exemption herein prescribed shall have expired, the property of said railroad may be taxed at the same rate as other property in this State.     All of said taxes to which the property of said company may be subject in this State, whether for county or State, shall be collected by the treasurer of this State and paid into the state treasury, to be dealt with as the legislature may direct ; but said company shall be exempt from taxation by cities and towns."

Since upon the expiration of the period of exemption, it would have followed that the property of the company would be subject to taxation at the same rate as other property, it may be that the object of the final clause was to create a scheme of taxation peculiar to the road.     Upon the comprehensiveness and validity of such scheme we do not undertake to pass.     It was not to take effect until the exemption expired, and the terms in which it was couched do not render the commencement of the exemption other than the Supreme Court held it to be.

The case is clearly controlled by our decision in *Vicksburg, Shreveport & Pacific Railway Company* v. *Dennis, supra,* and the judgment must therefore be

*Affirmed.*