Wanamaker, J.
This case is based on what has - become politically known as “The Home Rule Amendment,” pertaining to intoxicating liquors.
The question is not “Should it have passed?” That was addressed to the voters of Ohio at the November election. The question is not “What is the meaning and scope of the amendment?” That is a moot question here and must be reserved for concrete cases arising under the amendment if it should be a valid amendment.
The questions here are:
1. Did it carry? Did it become a part of our Ohio constitution?
2. Is it in conflict with the federal constitution?
Plaintiff in error contends that notwithstanding the official returns made to the secretary of state show a majority prima facie of 12,618 for the amendment, still said amendment did not carry because there was no valid legal machinery provided, either by the constitution or the statutes, for the submission of such amendment and for the casting, counting and returning of the votes thereon.
Article VIII, Section 1, Bill of Rights of the Ohio Constitution of 1802, contained the following provision:
“ * * * Every free republican government, being founded on their sole authority, and organ *178 ized for the great purpose of protecting their rights and liberties, and securing their independence: to effect these ends they [the people] have at all times a complete power to alter, reform or abolish their government, whenever they may deem it necessary.”
The Constitution of 1851 contains the following provision:
“All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary; * * * .” Article I, Section 2, Bill of Rights, Constitution of 1851.
This provision remains in the Constitution of 1912.
Under the amendments proposed and passed in the Constitution of 1912 for the submission of amendments the following provisions are pertinent. Article II, Section 1, of the Constitution of 1912, reads as follows:
“ * * * but the people reserve to therm selves the power to propose to the general assembly laws and amendments to the constitution, and to adopt or reject the same at the polls on a referendum vote as hereinafter provided. They also reserve the power * * * and independent of the general assembly to propose amendments to the constitution and to adopt or reject the same at the polls.”
Pursuant to this sovereign political power, which is inherent in the people, and their reserved right “to propose amendments to the constitution and to *179 adopt or reject the same at the polls,” a petition was initiated and filed with the secretary of state calling for the submission of such “home-rule amendment” at the next regular or general election.
No complaint is now made, or ever has been, that the petition was not in due form, duly signed and verified, all in accordance with the provisions of law, but the complaint is that there was no legal machinery, constitutional or statutory, for the submission of such amendment to the people for counting, canvassing and returning the votes thereon and the final determination and proclamation as to the official vote of the people of the state on such amendment. It may also be observed in passing that no claim or contention whatsoever was made prior to the election that such amendment had not been regularly and legally submitted. It is now claimed by the plaintiff in error that the vote on the amendment, therefore, was a mere nullity because the constitution failed to provide the necessary legal machinery agreeable to the words “as hereinafter provided,” as found in said Article II, Section 1.
We must remember that we are here construing the constitution of the state of Ohio, affecting five millions of people scattered over more than forty thousand square miles. We are not to use any millimeter measure of interpretation nor employ that strict construction peculiar to criminal law and procedure, but we are to employ that broad-gauged liberal construction that the general terms of constitutional provisions necessarily require in order to make them effective and carry out the real *180 intention of the people in making the constitution, through their representatives, and by adopting the constitution, by their own votes.
The polestar in the construction of constitutions, as well as other written instruments, is the intention of the makers and adopters.
Now what was to be “hereinafter provided?”
Manifestly the manner and means of proposing amendments to the constitution and adopting or rejecting the same by a referendum vote.
An examination of Section la, Article II, clearly and conclusively shows that the constitutionmakers proceeded forthwith to “hereinafter provide” for the submission of amendments to the constitution and for a referendum vote thereon. Notice the language of the very next section:
“Sec. la. The first aforestated power reserved by the people is designated the initiative, and the signatures of ten per centum of the electors shall be required upon a petition to propose an amendment to the constitution. When a petition signed by the aforesaid required number of electors, shall have been filed with the secretary of state, and verified as herein provided, proposing an amendment to the constitution, the full text of which shall have been set forth in such petition, the secretary of state shall submit for the approval or rejection of the electors, the proposed amendment, in the manner hereinafter provided, at the next succeeding regular or general election in any year occurring subsequent to ninety days after the filing of such petition. The initiative petitions, above described, shall have printed across the top thereof: *181 'Amendment to the Constitution Proposed by Initiative Petition to be Submitted Directly to the electors.’ ”
In addition to these numerous provisions specifically providing for the submission of constitutional amendments for a referendum vote in Section la, Section 1 g includes the further provisions:
"A true copy of all * * * proposed amendments to the constitution, together with an argument or explanation, or both, for, and also an argument or explanation, or both, against the same, shall be prepared. * * * The secretary of state shall cause to be printed * * * proposed amendment to the constitution, together with the arguments -and explanations * * * and shall mail, or otherwise distribute, a copy of such * * * proposed amendment to the constitution, together with such arguments and explanations for and against the same to each of the electors of the state, as far as may be reasonably possible. Unless otherwise provided by law, the secretary of state shall cause to be placed upon the ballots, the title of any such * * * proposed amendment to the constitution, to be submitted. He shall also cause the ballots so to be printed as to permit an affirmative or negative vote upon each * * * proposed amendment to the constitution. The style of all laws * * * shall be * * * and of all constitutional amendments: 'Be it Resolved by the People of the State of Ohio.’ * * * .”
Section lb provides for the ballots on such proposed amendment; also, if the amendment shall carry by a majority of the electors voting thereon, *182 when such amendment shall go into effect and the publication by the secretary of state :
“Ballots shall be so printed as to permit an affirmative or negative vote upon each measure submitted to the electors. Any proposed law or amendment to the constitution submitted to the electors as provided in section la and section lb, if approved by a majority of the electors voting thereon, shall take effect thirty days after the election at which it was approved and shall be published by the secretary of state.”
Again, in Section lg we have the following language:
“Any initiative, supplementary or referendum petition may be presented in separate parts but each part shall contain a full and correct copy of the title, and text of the law, section or item thereof sought to be referred, or the proposed law or proposed amendment to the constitution
This same section goes on to provide who may sign such petitions and how, and then further provides:
“No law or amendment to the constitution sub- ■ mitted to the electors by initiative and supplementary petition and receiving an affirmative majority of the votes cast thereon, shall be held unconstitutional or void on account of the insufficiency of the petitions,” etc.
The astonishing thing about these provisions is not their brevity but the minutia and detail with which the constitutionmakers provided for safeguarding the initiative and referendum as to constitutional amendments.
*183 But after all this was done, in order to make assurance doubly sure, fearing that they might have omitted some clerical step, the Constitution, at the close of Section 1 g, provides as follows :
“The foregoing provisions of this section shall be self-executing, except as herein otherwise provided. Laws may be passed to facilitate their operation, but in no way limiting or restricting either such provisions or the powers herein reserved.”
Agreeable to the last three lines of Section lg above quoted, the legislature of Ohio had formerly passed the following section (Section 4785, General Code), which reads:
“Except when otherwise provided by law, all public elections in this state shall be conducted according to the provisions of this title.”
And Section 5019, General Code, provides how constitutional amendments shall be submitted, as follows:
“ * * * The provisions of this title, so far as practicable, shall apply to the marking of ballots and the counting of votes upon any constitutional amendment so submitted.”
This section and other kindred sections are found in Part First of the General Code, under the head of “Title XIV. Public Elections,” which title provides for the entire election machinery of the state.
Again, Sections 5088 and 5089, General Code, under the same title, provide for the tally-sheet entries and the compiling and preparing of the count *184 on the day following the election and the certification of the result thereof to the secretary of state.
But it may be claimed that some of these sections were enacted by the legislature prior to the constitutional amendment on the initiative and referendum, and, therefore, have no application. This is fully answered by the express provision of the constitution saving certain statutes, as found in a schedule adopted with the regularly proposed amendments to the constitution on September 3, 1912. Such schedule reads as follows:
“The several amendments passed and submitted by this convention when adopted at the election shall take effect on the first day of January, 1913, except as otherwise specifically provided by the schedule attached to any of said amendments. All laws then in force, not inconsistent therewith shall continue in force until amended or repealed; 5ft * *
So that by express provision of the schedule all old statutes not repugnant to or inconsistent with the provisions of the new constitution are as applicable to the constitutional amendment as those that are passed subsequently to the adoption of the constitutional amendments of 1912.
So that throughout the constitution and the amendments we have abundance of provision for the submission of the amendment at a public election, for the preparation of the ballots, for the casting and counting of them, the certification of the result and the publication finally by the secretary of state. Indeed, it is difficult to imagine any additional provision that could have been made under *185 this right and power of the people for the amendment of their constitution by a referendum vote.
Judge Brewer in the famous Kansas case goes even further and holds that “If there were no legal machinery provision the court nevertheless must take judicial notice of the result.”
The language of the court on the prohibitory amendment is found in Constitutional Prohibitory Amendment, 24 Kans., 700, and is as follows:' “Suppose a majority did adopt, but no machinery is provided for ascertaining that fact, no one is authorized to canvass and proclaim the result, and no one in fact does so canvass and proclaim: must not the court nevertheless take judicial notice of the result ? When the constitution says that upon certain conditions an amendment is adopted, must we not take judicial notice of the happening of those conditions ? It is the election, and not the canvass, that works the change; and if we are bound to take notice ‘of everything that is allowed to affect the validity of any law,’ must we not of everything affecting the fundamental as well as the statute law ?” We hold that this objection to the amendment is not well taken.
As a reenforcement of our position on this question we quote liberally from the pertinent parts of the Kansas case, supra, by Judge Brewer:
“And first, the election itself was authorized by law. It was not a mere voluntary proceeding. The proposition was put by legislative sanction before the people, who were invited to consider and 'act upon it. ‘The following proposition * * * shall be submitted to the electors of the state for *186 adoption or rejection.’ Both constitution and statute name the time and the persons at which and to whom this proposition is submitted. And the statute further provides that the proposition shall be submitted ‘at the general election.’ This implies something more than the mere matter of time. The constitution says ‘at which time.’ But the statute goes further: it does not read, at the time, or on the day of the general election, but at that election itself. For the purpose of voting upon and determining the question submitted, it thus refers to and appropriates the statutory machinery of the general election. Concede that this may technically be limited to the mere proceedings of election day, and that the constitution and the statute together, prescribing the form of ballots, the parties entitled to vote, the time of election, and the election machinery, have exhausted their force at the close of the polls, and what then ?
“Must not the court take judicial notice of the result? We are bound to know what the constitution is — what the statutes are. We take judicial notice of them. No proof is required — none is proper. * * * ‘Of course, we take judicial notice, without proof, of all the laws of our own state. * * •* And in doing this, we take judicial notice of what our books of published law contain, of what the enrolled bills contain, of what the journals of the legislature contain, and, indeed, of everything that is allowed to affect the validity of any law, or that is allowed to affect or modify its meaning in any respect whatever.’
*187 “Now, the constitution provides that, ‘if a majority of the electors voting on said amendments at said election shall adopt the amendments, the same shall become a part of the constitution.’ Suppose a majority did adopt, but no machinery is provided for ascertaining that fact, no one is authorized to canvass and proclaim the result, and no one in fact does so canvass and proclaim: must not the court nevertheless take judicial notice of the result? When the constitution says that upon certain conditions an amendment is adopted, must we not take judicial notice of the happening of those conditions ? It is the election, and not the canvass, that works the change; and if we are bound to take notice ‘of everything that is allowed to affect the validity of any law,’ must we not of everything affecting the fundamental as well as the statute law? And judicial notice does not depend on the actual knowledge of the judge or the extent of the personal labor and inquiry required. The justice of the peace in the most remote county in the northwest portion of the state, who may never have seen a copy of the journal of either house, takes judicial notice of all things appearing in either journal, so far as they affect the validity of any law. When challenge is made, he must investigate and know. So, although it may seem extravagant, yet if the legislature has failed to make provision for the canvass of any vote on a proposed constitutional amendment, and if in fact none be made, must not the courts take judicial notice of the actual vote and its result? It may be said if we take judicial notice of votes on one question, why not on all, and what need of elec *188 tion contests? Let the court determine on its judicial knowledge. But we do not take judicial notice of votes and elections as such, but we can take notice of them so far, and only so far, as they affect the validity of some published law. * * *
“The courts are to know what is and what is not a public law of the state; what is and what is not a part of the constitution; and to that end, must take judicial notice of everything, near or remote, that determines such fact. This argument condensed, is this: The courts take judicial notice of what is public law, statutory or constitutional. When a majority of the electors voting on an amendment at an election properly ordered, adopts it, then it becomes a part of the constitution. So the constitution itself says. The courts must judicially know whether such amendment has been adopted, and is in fact a part of the constitution, and to that end, if need be, must take judicial notice of every ballot cast at that election.
“But, second: does not a fair reading, a reasonable construction of the resolution, make it broad enough to appropriate the entire election machinery, including all relating to canvass as well as to casting votes? It says that the proposition ‘shall be submitted to the electors of the state for adoption or rejection, at the general election to be held on the Tuesday succeeding,’ etc.; and the second section prescribes the form of the ballot. This, as we have just considered, plainly authorizes the vote.
“Does it not also appropriate the whole election machinery ?
*189 “We have a general election law. It is a single statute, yet it covers all details of ordinary elections, names election boards, prescribes rules of election, provides for returns and canvass of all votes * * * it is one election law of the state.It is a general election law. Now, when a proposition is submitted to the people at the general election, without further words or designation, does it not mean that the proposition is to be decided in the manner prescribed by that general election law ? It is an old and familiar doctrine that that which is within the spirit of the statute, though not within the letter, is a part of it; as well as that which is not within the spirit but within the letter, is not a part of it. * * * If * * * it should be stated that a question has been submitted to the electors at a specific and named election, the universal understanding would be, not only that the votes were to be received, but also that they were to be counted, canvassed, and the result proclaimed; and all this would be implied from the simple statement in reference to the submission. Should not equal extent be given to the language used by the legislature if, without such extent, its intended action fails? Of course, what the legislature omits, the courts cannot supply. But the largest latitude may, and should be given to the language used, in order to uphold, rather than defeat its action. Especially is this true when, otherwise, large interests fully considered, will fail, and more especially is this true, when upon the faith of such legislative action the people of the whole state have been stirred up and moved to express their judgment *190 upon a matter understood to be before them for decision. * * * Nearly two years elapsed between the time the proposition passed the legislature and the day of the popular vote. During this •time this question was not forgotten. It was discussed in every household and at every meeting. The state was thoroughly canvassed; its merits and demerits were presented and supported by all possible arguments. Pulpit, press and platform were full of it. It was assumed on all sides that the question was before the people for decision. There was not even a suggestion of any such defect in the form of submission as would defeat the popular decision. * * * But there was not a suggestion from friend or foe. The contest was warm and active. After the contest was ended and the election over, the claim is for the first time made that after all there was nothing in fact before the people; that this whole canvass, excitement and struggle was simply a stupendous farce, meaning nothing, accomplishing nothing. This is a government of the people, by the people, and for the people. This court has again and again recognized the doctrine lying at the foundation of popular governments, that in elections the will of the majority controls, and that mere irregularities or informalities in the conduct of an election are impotent to thwart the expressed will of such majority.”
The Ohio home-rule amendment in question reads as follows:
“No law shall be passed or be in effect prohibiting the sale, furnishing or giving away of intoxicating liquors operative ip a subdivision of the state
*191 upon the option of the electors thereof, or upon any other contingency which has force within a territory larger than a municipal corporation or a township outside of municipal corporations therein. All laws in contravention of the foregoing are hereby repealed. “Nor shall any law hereafter be passed prohibiting the sale, furnishing or giving away of intoxicating liquors throughout the state at large.”
Now, as to the second contention of plaintiff in error, that said “home-rule amendment” is contrary to the federal constitution, or, to use the language of plaintiff in error, a violation of the “Federal Compact.” Plaintiff in error does not attempt to specify any particular article, section or provision of the federal constitution which he claims nullifies this amendment. He contends, however, that it is a violation of the general-welfare clause of the preamble .of the federal constitution. That preamble reads as follows:
“We the people of the United States, in Order to form a more perfect Union, establish Justice, insure domestic Tranquillity, provide for the common defence, promote the general Welfare, and secure the Blessings of Liberty to ourselves and our Posterity, do ordain and establish this Constitution for the United States of America.”
The brief of plaintiff in error exhibits unusual research of cases and authorities to sustain his contention, but we are unable to find a single citation or authority which would authorize any court to declare any statuté of provision of any state constitution inyalid because the same was held com *192 trary and repugnant to the preamble of the federal constitution. The preamble of the federal constitution merely states the great cardinal purposes of government. It has been held again and again that it is not a grant or delegation of power, but merely a generic statement of the great aims and ends of our national government.
Chief Justice Fuller in Yazoo & Mississippi Valley Rd. Co. v. Thomas, 132 U. S., 174, 188, says:
“The preamble is no part of the act, and can not enlarge or confer powers, nor control the words of the act, unless they are doubtful or ambiguous.”
Judge Story, in his work on the Constitution (5 ed.), Vol. 1, Section 462, uses this language:
“The preamble never can be resorted to to enlarge the powers confided to the general government or any of its departments. It cannot confer any power per se; it can never amount, by implication, to an enlargement of any power expressly given. * * * Its true office is to expound the nature and extent and application of the powers actually conferred by the constitution, and not substantively to create them.”
Watson in his excellent work on the Constitution, Volume 1, page 92, and following, exhaustively discusses this phase of the subject and the authorities are collected to sustain this doctrine. We quote one more, Jacobson v. Massachusetts, 197 U. S., 11, 22:
“Although that preamble indicates the general purposes for which the people ordained and established the constitution, it has never been regarded as the source of any substantive power conferred *193 on the government of the United States or on any of its departments. Such powers embrace only those expressly granted in the body of the constitution, and such as may be implied from those so granted. Although, therefore, one of the declared objects of the constitution was to secure the blessings of liberty to all under the sovereign jurisdiction and authority of the United States, no power can be exerted to that end by the United States unless, apart from the preamble, it be found in some express delegation of power or in some power to be properly implied therefrom.”
Therefore, inasmuch as we have no delegation or denial of power in the preamble, how can it be said that any exercise of governmental power by the state by virtue of its state constitution can be violative of any grant of power or denial of power in the preamble of the federal constitution ? But it may be claimed that if a state constitutional provision cannot be held invalid or contrary to the federal constitution because of the provisions of the preamble to that federal constitution, yet the spirit of that preamble pervades all the provisions of the federal constitution, and therefore the proposed “home-rule amendment” is violative of that spirit and therefore unconstitutional.
The federal constitution is a delegation or denial of powers. This is clear from various provisions, but especially Article X of the Constitution, which reads:
“The powers not delegated to the United States by the Constitution, nor prohibited by it to the *194 States, are reserved to the States respectively, or to the people.”
In substance the same is true of our state constitution. It is a statement of delegated or denied powers to each branch of the government and to the various departments and subdivisions thereof. This appears in various parts of the constitution and the various amendments thereto, but is directly specified in Section 20 of Article I, which reads:
“This enumeration of rights shall not be construed to impair or deny others retained by the people; and all powers, not herein delegated, remain with the people.”
Cooley discusses the doctrine of violating the spirit of the constitution as follows:
“We have elsewhere expressed the opinion that a statute cannot be declared void on the ground solely that it is repugnant to a supposed general intent or spirit which it is thought pervades or lies concealed in the constitution, but wholly unexpressed, or because, in the opinion of the court, it violates fundamental rights or principles, if it was passed in the exercise of a power which the constitution confers. Still less will the injustice of a constitutional provision authorize the courts to disregard it, or indirectly to annul it by construing it away. It is quite possible that the people may, under the influence of temporary prejudice, or a mistaken view of public policy, incorporate provisions in their charter of government, infringing upon the proper rights of individual citizens or upon principles which ought ever to be regarded as sacred and fundamental in republican government; * * * The remedy *195 for such injustice must be found in the action of the people themselves, through an amendment of their work when' better counsels prevail. Such provisions, when free from doubt, must receive the same construction as any other.” Cooley’s Const. Lim. (7 ed.), 108.
To same effect is the following:
“Nor are the courts at liberty to declare an act void, because in their opinion it is opposed to a spirit supposed to pervade the constitution, but not expressed in words. 'When the fundamental law has not limited, either in terms or by necessary implication, the general powers conferred upon the legislature, we cannot declare a limitation under the notion of having discovered something in the spirit of the constitution which is not even mentioned in the instrument.’ ” Cooley’s Const. Lim. (7 ed.), 239-240; and a large number of cases there cited.
If it be true that all political power is inherent in the people and the powers specified in the constitution are a delegation or denial of power to the legislative branch, judicial branch or executive branch of the government, or any subdivision thereof, then it must follow that such delegation or denial with all their limitations are absolutely obligatory upon the people of the state, no less than upon the officers of the state, so long as such provisions remain a part of the constitution of the state. The remedy is not to amend or to nullify by legislative act or judicial decree, but by further amendment to the constitution in the way provided by law.
*196 Numerous cases can be found in which the state has undertaken, through its constitution and by its legislative acts, to arbitrarily, radically and drastically exercise its police power, which courts have held again and again to be a violation pf the personal rights and property rights guaranteed by the federal constitution. But we have been cited to no authority in which the state undertook not to enlarge but to diminish the exercise of its police power in which such action has been held contrary to the provisions of the federal constitution. If the state had adopted the prohibition or “dry” amendment, which was submitted on the same day, that would clearly be an enlargement of the police power of the state. Cases in large number are available to show that that enlargement of the police power has been contended as a violation of the federal constitution, but both state and federal courts have uniformly held that it was not such. If that be true as to a dry amendment, which enlarges the police power, it is difficult to comprehend why it is not also true when the state seeks to diminish that police power, as is claimed under the “home-rule” amendment. The people are the masters of their legislature and of every other branch of the government. In a matter involving exclusively state functions they may say in their organic law what the legislature may enact and what they may not enact, and a denial to a legislature of such a right, or what otherwise might be such a right, to pass certain laws cannot be made the basis of a valid claim that such denial is a violation of any right which the people of the state may have under the *197 federal constitution. As the constitution is above the legislature, so the people are above the constitution, subject to it and all its parts while it is in force, but possessed of the undoubted right to change, alter or amend it at their own will in any of the regular ways provided by constitution or laws.
The judgment of the court of appeals is, therefore, affirmed.

Judgment affirmed.

Nichols, C. J., Johnson, Donahue, Newman, Jones and Matthias, JJ., concur.