**WILLIAMS v. McGOWAN, Collector of Internal Revenue.**

**Civ. No. 1528.**

District Court, W. D. New York.

Dec. 9, 1944.

Mandeville, Buck, Tester & Marpending, of Elmira, N. Y., for plaintiff.

Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe and Benjamin H. Pester, Sp. Assts. to Atty. Gen., and George L. Grobe, U. S. Atty., and R. Norman Kirchgraber, Asst. U. S. Atty., both of Buffalo, N. Y., for defendant.

KNIGHT, District Judge.

The case has been submitted on an agreed state of facts. Two questions are at issue, to wit: (1) Are attorneys' fees paid for obtaining an income tax refund deductible expenses; and (2) Was the sale in question a sale of "capital assets".

Aaron F. Williams, taxpayer, and one Jacob Reynolds were copartners in a hardware business commencing in 1926 and continuing until Reynolds died on July 18, 1940. On September 6, 1940, the taxpayer purchased the Reynolds interest from the executrix of his will. The taxpayer had owned two-thirds interest in the business and Reynolds one-third. On September 17, 1940, the taxpayer sold all of his interest in the property and assets to the Corning Building Company, Inc. The taxpayer operated the store from the time of Reynolds' death to the time of the last-mentioned sale.

I. Are attorneys' fees paid for obtaining an income tax refund deductible expenses?

In 1936 and 1937 the copartners sustained losses on certain gas rights and lease holdings. An attorney was employed and performed legal services in the obtaining of a refund on account of these losses and was paid $700 for his services.

Section 121(a) (2) of the Revenue Act of 1942, Chap. 619, 56 Stat. 798, 26 U.S.C.A. Int.Rev.Acts, reads:

"Non-trade or non-business expenses.

"In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year *for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.*" (Italics mine.)

▮ In tax cases the statute is to be construed most strongly against the government, but exemptions are to be most strongly construed against the taxpayer. United States v. Stiles, 56 F.Supp. 881; Yazoo & M. V. R. Co. v. Thomas, 132 U.S. 174, 10 S.Ct. 68, 33 L.Ed. 302; New Colonial Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348; Deputy v. DuPont, 308 U.S. 488, 60 S.Ct. 363, 84 L. Ed. 416.

▮ Stoddard v. Commissioner of Internal Revenue, 2 Cir., 141 F.2d 76, 79, seems directly in point and to the effect that this legal expense is not deductible. Construing Section 121(a) (2), the Court said, in part: "A contest over the correct amount of petitioner's income taxes in previous years was not an ordinary and necessary expense paid 'for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.' " The facts there seem comparable to those in the instant case, and the decision is controlling here. The taxpayer cites two opinions in the Tax Court: Mary Lily Bingham v. Com'r, 2 T.C. 853; and McFaddin v. Com'r, 2 T.C. 395. These are not controlling.

The taxpayer concedes that this deduction is not allowable in full under the language of Regulation 111, Sec. 29.23(a) (15), but asserts that the deduction is within the contemplation of 23(a) (2) Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 23(a) (2). He intimates that if this new regulation is controlling, he is entitled to some deduction because of the provision in Rule 111, supra, "that part thereof (expenditures) which the taxpayer clearly shows to be properly allocable to the recovery of interest required to be included in income" is deductible. The answer to this is that there is no showing in the stipulation of the percentage of recovery represented by interest.

II. Did the sale of the assets and property which represented the taxpayer's original interest in the former partnership result in a long term capital loss?

There is some difference in the computation made by the taxpayer and the Commissioner as to the amount of any loss, but that difference can affect only the amount of the tax and not the question of whether the loss was a capital loss. The total investment of the copartnership was $96,924.02. The taxpayer had invested $73,379.23 and Reynolds $23,644.79, as appears from the settlement of the accounts between the partners as of January 31, 1940. The taxpayer added the amount paid by him for the Reynolds interest to the amount he himself had invested together with $1,555.38 withdrawals by Reynolds and restored to arrive at his total investment. From this he deducted the total amount received from the Corning Building Company, Inc., or $69,834.60, thereby leaving a net loss of $17,287.99. The Commissioner first computed the two-thirds interest of the taxpayer in the copartnership as of February 1, 1940, at $64,616.01, or two-thirds of $96,924.02. He deducted $46,556.40, or two-thirds of the amount which he received on the sale, from $64,-616.01. This method of computation shows a loss of $18,059.61. To the last-stated amount the Commissioner added profits, between February 1, 1940, and the time of the sale, in the amount of $5,718.08, making a total of $23,777.69. I do not seem to be able to harmonize the amounts given to show these profits. Defendant's brief states that the profits were $5,908.32, while as appears in the foregoing computation they were $5,718.08. The allowable credit on the loss of $23,777.69 is $11,-888.84, or fifty percent thereof.

On the sale from Reynolds to Williams there is shown a short time gain in the amount of $2,327.01, which the Commissioner allows.

The net income of the taxpayer as claimed in his return was $9,796.92. To this the Commissioner adds the aforesaid

694

sum of $11,888.84 (or 50% of $23,777.69) to make the net income as finally adjusted. On this basis the tax liability was $3,734.40 of which the taxpayer has paid $819.10, leaving a deficiency of $3,115.30.

Section 117(a) (1) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 117(a) (1), reads: "The term 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in Section 23(l)".

Section 23(e) provides that

"In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

"(1) if incurred in trade or business; or

"(2) if incurred in any transaction entered into for profit, though not connected with the trade or business;"

Section 117(a) (5) defines: "Long-term capital loss" as

"loss from the sale or exchange of a capital asset held for more than 18 months, if and to the extent such loss is taken into account in computing net income."

The agreement between Williams and Corning recites, in part:

"Whereas, the said party of the first part is the owner of a certain hardware business * * *, known and designated as the A. F. Williams Hardware" and "Whereas, the party of the first part (Williams) is desirous of selling said business * * *" and "Whereas, the party of the first part has made or caused to be made a computation of the estimated liquidating value of said business as of the 1st day of February, 1940, and Whereas, said computation has been accepted by the party of the second part as a basis for the purchase of said business, * * * the party of the first part agrees to sell and the party of the second part agrees to buy all the right, title and interest of the party of the first part in and to the hardware business now being conducted by the said party of the first part, including cash on hand and on deposit in the First National Bank and Trust Company of Corning in the A. F. Williams Hardware Store account, accounts receivable, bills receivable, notes receivable, merchandise and fixtures including two G. M. trucks, good will and all other assets of every kind and description used in and about said business for the sum of $63,926.28 plus an amount to be computed by multiplying the gross sales of said business from the 1st day of February, 1940, to the 28th day of September, 1940, both dates inclusive, by .08394%, and the assumption by the party of the second part of all liabilities against said business as of the 28th day of September, 1940."

Under the terms of this agreement it makes no difference whether part of the property included would come within the exemption provisions of Section 117, supra. The agreement calls for the sale of the entire assets together with the good will of the A. F. Williams Hardware at a liquidation value fixed as of February 1, 1940. As was said in Commissioner of Internal Revenue v. Shapiro, 6 Cir., 125 F. 2d 532, 535, 144 A.L.R. 349: "The price paid for the property in question may have been based partly on assets excluded under the act from the phrase 'capital assets' such as inventories or property held by the partnership primarily for sale to customers in the ordinary course of its trade or business. * * * Respondent sold all of his interest to the partnership, tangible and intangible, as a going concern, which in all essentials is different from the ordinary assets of the partnership used in the usual course of its business."

Further, the court said: "capital assets" "means all capital invested plus all surplus accounts or undivided profits left in the business for the purpose of accumulating and being used in the business and in addition such good will as had been established and accumulated over the years of its existence. The present partnership was dissolved by the sale under the fundamental principle that every change in the personnel of a firm works dissolution, and that an existing partnership is terminated and a new partnership formed whenever a partner retires or a new one is admitted, but where, as here, there is a sale of a part interest in the partnership as a going concern, no change is wrought in the character of the property sold.

"It is fundamental in applying tax statutes that matters of substance are of first importance."

In Stilgenbaur v. United States, 9 Cir., 115 F.2d 283, the taxpayer, with partners, carried on a general produce business. He transferred to his partners all his right, title and interest in and to specific property described as all his right, title and interest to stock in trade, goods, merchandise, machinery, tools, leasehold premises and effects, etc. The court held that the sale was of capital assets.

In McClellan v. Commissioner of Internal Revenue, 2 Cir., 117 F.2d 988, the question was whether loss sustained by a partner in withdrawing from the partnership is an ordinary loss or capital loss. The court held that the transaction amounted to sale of "capital assets" to remaining partners. The court, in part, said: "The effect of the retiring partner's withdrawal was to transfer to the other partners for continuance in the business his interest in the stock exchange seat and real estate. The Board correctly held that the transaction amounted to a sale of a capital asset to the remaining partners."

The court there cites as supporting this view: Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421; Munson v. Commissioner of Internal Revenue, 2 Cir., 100 F.2d 363.

Various factors go to show the intent to sell the entire assets of the business as of February 1, 1940. The purchase price of the Reynolds' interest and the sale price to the Corning Building Company, Inc., were both based on the inventories as of January 31, 1940. The profits received between January 1, 1940, and the date of the sale by the taxpayer were estimated, returned to the business and included in the sale to the Corning Building Company, Inc. Under the agreement for the purchase of the Reynolds' interest there was never any accounting for income received and no credit given for profits of the business from July 18 to September 16, 1940.

This being a sale of the entire assets, it can hardly be contended that the property as a whole was "held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." It is true that part of the property sold is stock in trade of a kind which may "properly be included in the inventory" of the taxpayer, and part of the entire property sold was "of a character which is subject to the allowance for depreciation provided in Section 23(l)", but these facts do not militate against a holding that the sale of the entire assets as one sale was a sale of "capital assets." Under the facts and circumstances hereinbefore shown, it seems to the court that the sale is to be construed as a sale of the partnership as of February 1, 1940, and that therefore there was a "long-term capital loss" of $23,707.60. Upon this the taxpayer is entitled to a credit of 50 percent of this loss, or $11,888.84.

While the cases to which we have hereinbefore referred relate to sale of partnership interests, no reason is seen why the same results would not obtain in the case of the sale of the business as of September 17, 1940, by the individual owner. The question is whether the assets sold were "long-term capital assets" within the meaning of the statute.

The complaint must be dismissed with costs.